IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ACCEPTANCE INSURANCE COMPANIES INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2794 (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

JOHN H. WILLIAMSON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L St., N.W., 8th floor
Washington, D.C. 20530
Tel: (202) 307-0277
Fax: (202) 307-0972
E-mail: john.williamson@usdoj.gov

OF COUNSEL:

DONALD A. BRITTENHAM, JR.
Attorney
Community Development Division
Office of the General Counsel
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

February 10, 2006

Attorneys for Defendant

# TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX TO DEFENDANT'S APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Nature Of Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Statement Of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. Legal Standard for Dispositive Motions Pursuant To RCFC 12(b)(1) and 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. RCFC 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B. RCFC 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II. The Court Should Dismiss This Suit For Lack Of Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. Congress Has Granted Federal District Courts Exclusive Jurisdiction Over All Suits Challenging Actions Taken By RMA For FCIC . . . . . . . . . . . 8

1. This Suit Asserts A Claim "Against" FCIC For Purposes Of 7 U.S.C. § 1506(d) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

2. Congress Has Divested This Court Of Jurisdiction Over Claims Against FCIC . . . . . . . . . . . . . . . . . . . . . . 10

B. Plaintiff Has Failed To Meet The Express Statutory Requirement That It Exhaust Its Administrative Remedies Before Filing Suit In District Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1. 7 U.S.C. § 6912(e) Mandates That Exhausting Administrative Remedies Is A Jurisdictional Prerequisite To Filing Suit . . . . . . . . . 15

2. Acceptance Failed To Exhaust Administrative Remedies To Challenge RMA's Refusal To Waive Restrictions On Transferring Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III. In The Alternative, The Court Should Grant Summary Judgment, Because Acceptance Cannot Prove The Elements Of A Compensable Taking . . . . 23

A. Acceptance Could Not Hold Any Compensable Property Interest In The Unrestricted Transfer Of American Growers' MPCI Policies . . . . . . 24

B. RMA Did Not Effect A Compensable Taking By Refusing To Grant The Waivers Requested By Rain and Hail . . . . . . . . . . . . . . . . . . . . . 28

1. Acceptance Cannot Prove That RMA Effected A Categorical Taking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

2. Acceptance Cannot Prove A Noncategorical Taking . . . . . . . . . . . . 31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# TABLE OF AUTHORITIES

## CASES

Ace Property & Casualty Ins. Co. v. Federal Crop Ins. Corp. and Risk Management Agency,
357 F. Supp. 2d 1140 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

Ace Property & Casualty Ins. Co. v. United States,
60 Fed. Cl. 175 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

Admin v. Burr,
309 U.S. 242 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Aerolineas Argentinas v. United States,
77 F.3d 1564 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

American Growers Ins. Co. v. FCIC,
210 F. Supp. 2d 1088 (S.D. Iowa 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17, 21

American Pelagic Fishing Co., L.P. v. United States,
379 F.3d 1363 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27, 30, 32

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Andrus v. Allard,
444 U.S. 51 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Bailey v. United States,
341 F.3d 1342 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 34

Bastek v. Federal Crop Ins. Corp.,
145 F.3d 90 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Branch v. United States,
301 F.3d 1571 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Brown v. General Servs. Admin.,
426 U.S. 820 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Calhoun v. USDA Farm Service Agency,
920 F. Supp. 696 (N.D. Miss.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

California Housing Sec., Inc. v. United States,
995 F.2d 955 (Fed. Cir.),
cert. denied, 506 U.S. 916 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Camargo Correa Metls, S.A. v. United States,
200 F.3d 771 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Castle v. United States,
301 F.3d 1328 (Fed. Cir. 2002),
cert. denied, 539 U.S. 925 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Chancellor Manor v. United States,
331 F.3d 891 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Conti v. United States,
48 Fed. Cl. at 537 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 31, 35

Dalton v. Cessna Aircraft Co.,
98 F.3d 1298 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Deaf Smith County Grain Processsor, Inc. v. Glickman,
162 F.3d 1206 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 24

Del-Rio Drilling Programs, Inc. v. United States,
146 F.3d 1358 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Embrey v. United States,
17 Cl. Ct. 617 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Farmers Alliance Mut. Ins. Co. v. FCIC,
2001 WL 30443 (D. Kan., Jan. 3, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Farmers & Merchants Bank of Eatonton, Georgia v. United States,
43 Fed. Cl. 38 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Federal Housing Admin v. Burr,
309 U.S. 242 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fiorentino v. United States,
221 Ct. Cl. 607 F.2d 963 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Fortec Constructors v. United States,
760 F.2d 1288 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Franchise Tax Bd. of Cal. v. United States Postal Service,
467 U.S. 512 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Gilmer-Glenville Ltd. Partnership v. Farmers Home Admin.,
102 F. Supp. 2d 791 (N.D. Ohio 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Gleichman v. Department of Agriculture,
896 F. Supp. 42 (D. Maine 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Gold Dollar Warehouse, Inc. v. Glickman,
211 F.3d 93 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Golden Pacific Bancorp v. United States,
15 F.3d 1066 (Fed. Cir.),
cert. denied, 513 U.S. 961 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Harris v. United States,
841 F.2d 1097 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Henke v. United States,
60 F.3d 795 (Fed. Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hughes Communications Galaxy, Inc. v. United States,
271 F.3d 1060 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

John Muir Mem. Hosp., Inc. v. United States,
221 Ct. Cl. 843 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Kleissler v. United States Forest Service,
183 F.3d 196 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

La Van v. United States,
382 F.3d 1340 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Lingle v. Chevron U.S.A., Inc.,
____ U.S. ____, 125 S. Ct. 2074 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Lucas v. South Carolina Coastal Council,
505 U.S. 1003 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

M & J Coal Co. v. United States,
47 F.3d 1148 (Fed. Cir.),
cert. denied, 516 U.S. 808 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Maritrans Inc. v. United States,
342 F.3d 1344 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Matson Navigation Co. v. United States,
284 U.S. 352 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

McCarthy v. Madigan,
503 U.S. 140 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

McKart v. United States,
395 U.S. 185 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

McNeil v. United States,
508 U.S. 106 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Nobles v. Rural Comm. Ins. Servs.,
122 F. Supp. 24 (M.D. Ala. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Penn Central Transp. Co. v. City of New York,
438 U.S. 104 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Pixton v. B & B Plastics, Inc.,
291 F.3d 1324 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Puget Sound Power & Light Co. v. United States,
23 Cl. Ct. 46 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

R & R Farm Enterprises, Inc. v. Federal Crop Ins. Corp.,
788 F.2d 1148 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Rain & Hail Ins. Serv., Inc. v. FCIC,
229 F. Supp. 2d 710 (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 17

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rith Energy, Inc. v. United States,
247 F.3d 1355 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 38

Rose Acre Farms, Inc. v. United States,
373 F.3d 1177 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Ruckelshaus v. Monsanto Co.,
467 U.S. 986 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Scheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

St. Vincent's Med. Ctr. v. United States,
32 F.3d 548 (Fed. Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Sun Oil Co. v. United States,
215 Ct. Cl. 572 F.2d 786 (1978) . . . . . . . . . . 26

Superior Fireplace Co. v. The Majestic Products Co.,
270 F.3d 1358 (Fed. Cir. 2001) . . . . . . . . . . 11

Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . 7

Taylor v. United States,
303 F.3d 1357 (Fed. Cir. 2002) . . . . . . . . . . 6

Texas Peanut Farmers v. United States,
409 F.3d 1370 (Fed. Cir. 2005) . . . . . . . . . . passim

Texas Peanut Farmers v. United States,
59 Fed. Cl. 70 (2003) . . . . . . . . . . passim

Textron Def. Sys. v. Widnall,
143 F.3d 1465 (Fed. Cir. 1998) . . . . . . . . . . 7

United States v. Erika, Inc.,
452 U.S. 201 (1982) . . . . . . . . . . 14

United States v. Fausto,
484 U.S. 439 (1988) . . . . . . . . . . 14, 23

United States v. Huber,
2002 WL 257851 (D.N.D. Jan. 3, 2002) . . . . . . . . . . 11

United States v. Johnson Controls, Inc.,
713 F.3d 1541 (Fed. Cir. 1983) . . . . . . . . . . 7

Utah Shared Access Alliance v. Wagner,
98 F. Supp. 2d 1323 (D. Utah 2000) . . . . . . . . . . 18

Varilease Technology Group, Inc. v. United States,
289 F.3d 795 (Fed. Cir. 2002) . . . . . . . . . . 7

Whitecliff, Inc. v. United States,
536 F.2d 347, 210 Ct. Cl. (1976),
cert. denied, 430 U.S. 969 (1977) . . . . . . . . . . 15

Williams Farms of Homestead, Inc. v. Rain and Hail Ins. Servs., Inc.,
121 F.3d 630 (11th Cir. 1997) . . . . . . . . . . 12

Wilson v. United States,
405 F.3d at 1015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 23

**STATUTES**

Pub. L. 96-365, § 103(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5 U.S.C. § 552a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 U.S.C. § 552a(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 U.S.C. § 7121(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

7 U.S.C. § 1506(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

7 U.S.C. § 1508(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7 U.S.C. § 6912(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

7 U.S.C. § 6933(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

16 U.S.C. § 839f(e)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 1346(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 12

28 U.S.C. § 1491(a)(1) (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. § 405(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C. § 1395oo(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**REGULATIONS**

7 C.F.R. § 400.169 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**INDEX TO DEFENDANT'S APPENDIX**


| Tab | | Page |
|---|---|---|
| 1 | 2002 FCIC Crop Insurance Handbook, Sections 2 and 4.C(9) | 1 |
| 2 | "History Of The Crop Insurance Program" | 5 |
| 3 | Plaintiff's Motion For Leave To Amend Its Complaint | 8 |
| 4 | Plaintiff's Responses To Defendant's First Requests For Admission | 27 |
| 5 | Deposition of Ross Davidson (excerpts) | 35 |
| 6 | Deposition of John Joyce (excerpts) | 103 |
| 7 | Deposition of John Martin (excerpts) | 158 |
| 8 | Depo. Ex. 2 (Defendant's Responses to Plaintiff's First Interrogatories) | 196 |
| 9 | Depo. Ex. 14 (June 2004 GAO Report on American Growers) | 223 |
| 10 | Depo. Ex. 15 (Nov. 22, 2002 RMA Analysis "Rain & Hail Deal") | 279 |
| 11 | Depo. Ex. 21 (Nov. 22, 2002 letter from Ross Davidson to John Martin) | 282 |
| 12 | Depo. Ex. 22 (Nov. 25, 2002 letter from John Martin to Ross Davidson) | 283 |
| 13 | Depo. Ex. 23 (Nov. 22, 2002 letter from John Joyce to Ross Davidson) | 288 |
| 14 | Depo. Ex. 25 (Nov. 25, 2002 letter from Ross Davidson to John Joyce) | 289 |
| 15 | Depo. Ex. 26 (Nov. 26, 2002 letter from John Joyce to Ross Davidson) | 291 |
| 16 | Depo. Ex. 29 (Nov. 18, 2002 letter of intent between Acceptance and Rain and Hail) | 294 |
| 17 | Depo. Ex. 32 (Dec. 4, 2003 letter from Michael Davenport to Patrick Griffin) | 303 |
| 18 | Depo. Ex. 33 (excerpts) ("Direct Transactional Documents" from Rain and Hail) | 305 |
| 19 | Depo. Ex. 35 (June 19, 2002 Acceptance presentation to RMA) | 312 |
| 20 | Depo. Ex. 36 (June 5, 2001 Assumption Agreement for IGF policies) | 373 |
| 21 | Depo. Ex. 37 (American Growers SRA for 2002 and 2003) | 375 |


**Tab** **Page**

22 Depo. Ex. 38 (Philo Smith & Co. AmAg Information Memorandum) . . . . . . . . . . 418

23 Depo. Ex. 39 (Oct. 30, 2002 email from John Martin to Mike McCarthy) . . . . . . . 439

24 Depo. Ex. 42 (Nov. 19, 2002 email from Mike McCarthy with attachments) . . . . 440

25 Depo. Ex. 48 (Nov. 19, 2002 Form 10-Q for Acceptance Ins. Co. Inc.) . . . . . . . . . 448

26 Depo. Ex. 63 (Nov. 22, 2002 Nebraska Dept. of Insurance Order of Supervision) 487

27 Dec. 20, 2002 Nebraska Dept. of Insurance Order of Rehabilitation . . . . . . . . . . . 492

28 March 24, 2005 Nebraska Dept. of Insurance Amended Order of Liquidation . . . 499

29 Dec. 5, 2002 letter from Michael Gottschalk to Ross Davidson . . . . . . . . . . . . . . . 506

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ACCEPTANCE INSURANCE COMPANIES INC., Plaintiff, | ) | |
| v. | ) | No. 03-2794 (Judge Wheeler) |
| THE UNITED STATES, Defendant. | ) | |

**STATEMENT OF CASE**

**I. Nature Of Case**

Plaintiff, Acceptance Insurance Companies Inc., asserts a Fifth Amendment taking claim based upon its former ownership of American Growers Insurance Company, a failed crop insurance provider that is now being liquidated by the Nebraska Department of Insurance. American Growers annually entered a Standard Reinsurance Agreement ("SRA") with the Federal Crop Insurance Corporation ("FCIC") to sell and service crop Multi Peril Crop Insurance ("MPCI") policies to eligible farmers pursuant to the terms of the SRA. FCIC is a wholly-owned Government corporation within the Department of Agriculture, and is supervised by the Risk Management Agency ("RMA"), which acts on behalf of FCIC to deliver and administer all Federal crop insurance programs.

In November 2002, Acceptance entered into a non-binding letter of intent to sell certain of American Growers' MPCI policies and other assets to another crop insurance provider, Rain and Hail LLC. After Acceptance and Rain and Hail negotiated the letter of intent, Rain and Hail requested that RMA waive restrictions set through the SRA that barred transferring in-force MPCI policies from one insurer to another. RMA responded that it would follow its past practice, which was to waive the restrictions only if the acquiring

insurer agreed to assume all liabilities for the policies, including claims for prior reinsurance years. Because Rain and Hail would not agree to assume all liabilities for American Growers' policies for 2002 and prior reinsurance years, Rain and Hail chose not to consummate the proposed transaction with Acceptance.

Acceptance asserts that RMA effected a taking of Acceptance's property, allegedly by

"blocking" Acceptance's sale of the American Growers' MPCI policies to Rain and Hail. Acceptance seeks the fair market value of American Growers' policies and other assets according to the terms of the letter of intent, under which Acceptance would have received a cash payment of $21.5 million plus other payments that Acceptance's expert estimates would have resulted in a total payment of approximately $36 to $38 million to Acceptance.

Defendant renews its motion to dismiss for lack of subject matter jurisdiction on two grounds. First, after the Court denied defendant's initial motion to dismiss, the United States Court of Appeals for the Federal Circuit affirmed the dismissal of a suit filed in this Court that claimed that RMA had changed the terms of MPCI policies developed by FCIC. Texas Peanut Farmers v. United States, 409 F.3d 1370, 1374 (Fed. Cir. 2005), aff'g Texas Peanut Farmers v. United States, 59 Fed. Cl. 70 (2003). The Federal Circuit concluded that the plain meaning of the Federal Crop Insurance Act, 7 U.S.C. § 1506(d), was that "Congress granted district courts exclusive jurisdiction over claims against the FCIC." Id. at 1374. The court rejected the plaintiff's attempt to avoid the statute's mandate by filing suit in this Court and naming the United States rather than FCIC as defendant. Id. at 1372.

Similarly, here Acceptance has named the United States as defendant, but asserts that it was RMA's Administrator, who by statute also serves as FCIC's Manager, who effected the Government's alleged taking of American Growers' MPCI policies. Because Congress

has expressly granted district courts exclusive jurisdiction over "all suits" against FCIC without excluding taking claims, this Court should dismiss this suit for lack of subject matter jurisdiction. 7 U.S.C. § 1506(d).

The second ground for our renewed motion to dismiss is that Acceptance has failed to exhaust statutory administrative remedies that are mandated by 7 U.S.C. § 6912(e). Although Acceptance has pleaded its claim as a taking, the specific property interest that Acceptance asserts was taken – its alleged right to transfer American Growers' in-force MPCI policies to Rain and Hail – is governed by the SRA between American Growers and FCIC. The SRA requires insurers to comply with the Crop Insurance Handbook that FCIC issues each year, and that is expressly incorporated into the SRA. It was a specific provision of the Crop Insurance Handbook – Section 4.C(9) – that Rain and Hail requested RMA to waive so that Acceptance could transfer American Growers' in-force policies to Rain and Hail.

Acceptance was required by 7 U.S.C. § 6912(e) to challenge RMA's refusal to waive Section 4.C(9) before the Department of Agriculture Board of Contract Appeals ("AgBCA") pursuant to the Section V.L of the SRA and 7 C.F.R. § 400.169, which states that an insurer may appeal to the AgBCA any "action that is not in accordance with the provisions of the Standard Reinsurance Agreement." Because Acceptance has failed to exhaust this statutorily mandated administrative remedy, the Court should dismiss this suit for lack of subject matter jurisdiction.

If the Court denies our motion to dismiss, it should grant our motion for summary judgment, because as a matter of law Acceptance cannot prove that it held a property interest in American Growers' MPCI policies that is compensable pursuant to the Fifth Amendment. It was not Acceptance, but American Growers, who owned the MPCI policies that

Acceptance asserts RMA rendered valueless. Moreover, neither American Growers nor Acceptance could hold any compensable property interest in American Growers' in-force MPCI policies that included the right to transfer them without restriction. The conditions under which the policies could be transferred are governed by the SRA. Because any rights and restrictions concerning the transfer of the policies were created by contract, Acceptance cannot assert the existence of any property interest in the policies that gives rise to a taking claim, but rather is limited to seeking relief for breach of contract damages.

Even if Acceptance could demonstrate that it held a compensable property interest in American Growers' MPCI policies, it cannot prove that RMA effected any compensable taking. Acceptance could not hold any reasonable investment-backed expectation that if Rain and Hail refused to assume liability for the transferred policies for all prior years, RMA would still waive the restrictions of Section 4.C(9) of the FCIC Crop Insurance Handbook. Indeed, in 2001, only a year before the proposed transaction between Acceptance and Rain and Hail, RMA waived the 4.C(9) restrictions when American Growers purchased the MPCI policies of another insurer, but only on the condition that American Growers assume the liability for all prior years.

The character of RMA's action was not that of a taking, but was similar to a banking regulator taking control of an insolvent bank. Acceptance announced a very large third-quarter loss the day after the letter of intent was signed. RMA refused to waive Section 4.C(9) because of its concerns about the effect of the proposed transaction on policyholders, other insurers, RMA, and taxpayers. Finally, the economic impact of the alleged taking is speculative, because the letter of intent was not binding on either Acceptance or Rain and Hail, and did not accurately reflect the value of the in-force policies once the restriction on transfer imposed by Section 4.C(9) is considered.

**II. <u>Statement Of Facts</u>**

We respectfully refer the Court to our proposed findings of uncontroverted facts filed herewith.

**<u>STATEMENT OF ISSUES</u>**

1. Whether this Court possesses subject matter jurisdiction over this suit, because 7 U.S.C. § 1506(d) grants exclusive jurisdiction to Federal district courts over suits that challenge actions allegedly taken by FCIC or RMA?

2. Whether this Court possesses subject matter jurisdiction over this suit, because Acceptance has failed to exhaust administrative appeal procedures before filing this suit, as required by 7 U.S.C. § 6912(e), the SRA, and 7 C.F.R. § 400.169?

3. Whether Acceptance owned any property interest in American Growers' insurance policies that is compensable pursuant to the Fifth Amendment?

4. Whether RMA effected a taking of Acceptance's property that is compensable pursuant to the Fifth Amendment when RMA refused to waive the restrictions of Section 4.C(9) to permit the transfer of American Growers MPCI policies to Rain and Hail?

**<u>ARGUMENT</u>**

**I. <u>Legal Standard for Dispositive Motions Pursuant To RCFC 12(b)(1) and 12(b)(6)</u>**

**A. <u>RCFC 12(b)(1)</u>**

Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") governs dismissal of a claim for lack of subject matter jurisdiction. RCFC 12(b)(1). In ruling on a Rule 12(b)(1) motion to dismiss, the court "view[s] the alleged facts in the complaint as true," <u>Pixton v. B & B Plastics, Inc.</u>, 291 F.3d 1324, 1326 (Fed. Cir. 2002), and "draw[s] all reasonable inferences in plaintiff's favor." <u>Henke v. United States</u>, 60 F.3d 795, 797 (Fed. Cir.1995) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236-37 (1974)). However,

plaintiffs, as the non-moving party, bear the burden of establishing jurisdiction by a preponderance of the evidence. Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir.1988). To determine whether the Court has jurisdiction, it may consider evidence outside the pleadings to resolve the issue. Aerolineas Argentinas v. United States, 77 F.3d 1564, 1572 (Fed. Cir. 1996).

Plaintiff asserts that the Tucker Act, 28 U.S.C. § 1491, grants this Court jurisdiction to consider plaintiff's taking claim. Am. Compl.[1] ¶ 5. The Tucker Act confers jurisdiction upon the Court of Federal Claims with respect to claims for money damages against the United States "founded . . . upon the Constitution." 28 U.S.C. § 1491(a)(1) (1994). The Federal Circuit has stated that "[t]here are, of course, instances in which courts find that Congress has displaced Tucker Act jurisdiction in favor of some other remedial scheme." Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1367 (Fed. Cir. 1998).

**B. RCFC 56**

Summary judgment is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). It is "a salutary method of disposition 'designed to secure the just, "speedy and inexpensive determination of every action."'" Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

Facts are material only if they "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Substantive law provides the basis to identify

---

[1] "Am. Compl." refers to the first amended complaint filed by Acceptance on April 1, 2005.

the material facts. Embrey v. United States, 17 Cl. Ct. 617 (1989). A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

"Contract interpretation is a question of law generally amenable to summary judgment." Varilease Technology Group, Inc. v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002) (citing Textron Def. Sys. v. Widnall, 143 F.3d 1465, 1468 (Fed. Cir. 1998). "We read the language of a particular contractual provision in the context of the entire agreement, United States v. Johnson Controls, Inc., 713 F.3d 1541,1555 (Fed. Cir. 1983), and construe the contract so as not to render portions of it meaningless, Fortec Constructors v. United States, 760 F.2d 1288, 1292 (Fed. Cir. 1985)." Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1305 (Fed. Cir. 1996).

In this case, there are no material disputed facts regarding the terms of the SRA or Section 4.C(9), or regarding the discussions between RMA, Rain and Hail, and Acceptance concerning the proposed transaction, that preclude entry of summary judgment for defendant.

## II. The Court Should Dismiss This Suit For Lack Of Subject Matter Jurisdiction

On February 9, 2004, we filed our initial motion to dismiss this suit for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim. The Court denied our motion to dismiss on Friday, August 13, 2004. We have renewed our motion to dismiss for two reasons. First, at the time it denied our motion to dismiss, the Court did not have the benefit of the guidance provided by the Federal Circuit when it issued its opinion in Texas Peanut Farmers in May 2005. Second, discovery established certain uncontroverted facts that were unavailable to the Court when it ruled upon our initial motion, and that provide a basis for dismissing the complaint because Acceptance failed to exhaust administrative remedies.

### A. Congress Has Granted Federal District Courts Exclusive Jurisdiction Over All Suits Challenging Actions Taken By RMA For FCIC

#### 1. This Suit Asserts A Claim "Against" FCIC For Purposes Of 7 U.S.C. § 1506(d)

The Federal Crop Insurance Act chartered FCIC in 1938 as a wholly-owned Government corporation, and waived sovereign immunity so that FCIC could "sue and be sued" in Federal and state court. 7 U.S.C. § 1506(d)[2]; R & R Farm Enterprises, Inc. v. Federal Crop Ins. Corp., 788 F.2d 1148, 1152 (5th Cir. 1986) (citing Franchise Tax Bd. of Cal. v. United States Postal Service, 467 U.S. 512, 516-20 (1984) and Federal Housing Admin v. Burr, 309 U.S. 242, 245 (1940). Section 1506(d) was amended in 1980 to provide that the "[t]he district courts of the United States . . . shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the [Federal Crop Insurance] Corporation." 7 U.S.C. § 1506(d)[3] (emphasis added).

In its August 13, 2004 order denying our motion to dismiss, this Court stated that "Section 1506(d) controls issues that arise under the Federal Crop Insurance Act, such as suits against the Corporation alleging violation of its duties." Order at 2. However, Section 1506(d) places no limitations upon the types of suits that may be filed against FCIC. Section 1506(d) states that district courts possess exclusive jurisdiction over "all suits" against FCIC. There is no exception for taking claims.

In Texas Peanut Farmer, the Federal Circuit interpreted Section 1506(d) as well as Section 1508(j), which requires that a farmer who sues FCIC for denying an indemnity claim

---

[2] The Agricultural Adjustment Act (AAA) of 1938 (Public Law 75-430) established the Federal Crop Insurance Act of 1938 (52 Stat. 72) in Title V.

[3] Federal Crop Insurance Act of 1980, Public Law 96-365, 94 Stat. 1312 (Sept. 26, 1980).

must file suit in the district court where the farm is located. 7 U.S.C. § 1508(j). The court found that "[t]he plain meaning of these two sections is that Congress granted district courts exclusive jurisdiction over claims against the FCIC" 409 F.3d at 1374 (emphasis added). Although the plaintiff in Texas Peanut Farmers asserted a breach of contract claim, the Federal Circuit did not exclude taking claims or any other category of claims when it stated that this Court lacks jurisdiction over "claims against the FCIC." Id.

In the August 13, 2004 order denying our motion to dismiss, this Court also stated that "[t]his is a claim against the United States alleging a Fifth Amendment taking. The Court of Federal Claims has jurisdiction to hear and determine taking claims against the United States." Order at 2 (emphasis added). While there is no doubt that the Tucker Act grants this Court jurisdiction to hear taking claims pursuant to 28 U.S.C. § 1491(a), Acceptance cannot avoid the effect of Section 1506(d) by naming the United States as defendant. In Texas Peanut Farmers, the Federal Circuit stated that "[a]ppellants' strategic decision not to name the FCIC as a defendant is merely an attempt to avoid the strictures of the [insurance policy] and section 1508(j) and 1506(d)." 409 F.3d at 1373 (emphasis added). The suit filed by Acceptance asserts a claim "against" FCIC within the meaning of Section 1506(d), because the actions Acceptance challenges were taken by RMA on behalf of FCIC. Nor can Acceptance avoid the effect of Section 1506(d) by alleging that it was RMA, rather than FCIC, that effected the taking.

The allegations pleaded by Acceptance demonstrate that its suit is not a claim against the United States, but a claim "against" FCIC within the meaning of Section 1506(d). Acceptance has pleaded that it was RMA, which "supervises the FCIC," that effected the alleged taking "acting as an agent of the United States." Am. Compl. ¶¶ 4, 24. Acceptance has also pleaded that it was RMA Administrator Ross Davidson who allegedly effected the

taking of Acceptance's property by "rejecting" the proposed transaction. Am. Compl. ¶¶ 14-17. By statute, the Administrator of RMA also serves as the Manager of FCIC. 7 U.S.C. § 6933(c)(1)-(2).

Numerous courts have ruled that RMA is the same entity as FCIC for purposes of Section 1506(d). American Growers Ins. Co. v. FCIC, 210 F. Supp. 2d 1088, 1094 (S.D. Iowa 2002) (because RMA has supervisory authority over FCIC, Section 1506(d) applies equally to RMA); Rain & Hail Ins. Serv., Inc. v. FCIC, 229 F. Supp. 2d 710, 715 (S.D. Tex. 2002) (same)[4]; Nobles v. Rural Comm. Ins. Servs., 122 F. Supp. 24 1290, 1292 (M.D. Ala. 2000) (RMA is the federal agency formerly known as the FCIC); United States v. Huber, 2002 WL 257851 at *4 (D.N.D. Jan. 3, 2002) (FCIC is the same entity as the RMA). Thus, Acceptance's assertion that RMA effected a taking of Acceptance's property states a claim against FCIC within the meaning of Section 1506(d) of the Federal Crop Insurance Act. 7 U.S.C. § 1506(d).

### 2. Congress Has Divested This Court Of Jurisdiction Over Claims Against FCIC

In its August 13, 2004 order, this Court stated that the purpose of the Federal Crop Insurance Act "does not appear to be inconsistent with this [C]ourt's Tucker Act jurisdiction to hear takings claims against the United States." Order at 2. However, in Texas Peanuts, the Federal Circuit stated that "Congress may withdraw any grant of Tucker Act jurisdiction," and held that Section 1506(d) of the Federal Crop Insurance Act divested the

[4] In Rain and Hail, we argued that the district court did not possess jurisdiction over RMA as a defendant because Section 1506(d) states that FCIC "may sue and be sued in its corporate name." The district court properly rejected this argument, and we acknowledge our error. 229 F. Supp. 2d at 712 ("denying dismissal against the FCIC and RMA"). Although this Court's August 13, 2004 order stated that the Government had taken "inconsistent legal positions," only Congress, not the Executive branch, can set the scope of this Court's jurisdiction.

Court of jurisdiction over claims against FCIC. 409 F.3d at 1373 (citing Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016-17 (1984)). Section 1506(d) expressly grants Federal district courts "exclusive original jurisdiction" over all suits against FCIC.

Federal Circuit has stated that "'[i]n construing a statute . . . we begin by inspecting its language for plain meaning. If the words are unambiguous, no further inquiry is usually required.'" Superior Fireplace Co. v. The Majestic Products Co., 270 F.3d 1358, 1369 (Fed. Cir. 2001) (quoting Camargo Correa Metls, S.A. v. United States, 200 F.3d 771, 773 (Fed. Cir. 1999)). The plain meaning of Section 1506(d) is that it grants district court's exclusive jurisdiction over any claims against the FCIC or the RMA, including plaintiff's claim that the RMA effected a taking of plaintiff's assets. Black's Law Dictionary (7th ed.) defines "exclusive jurisdiction" as "[a] court's power to adjudicate an action or class of actions to the exclusion of all other courts. . . . Cf. *concurrent jurisdiction*."

Before the Federal Crop Insurance Act was amended in 1980, district courts shared concurrent jurisdiction with state courts over suits against the FCIC. Williams Farms of Homestead, Inc. v. Rain and Hail Ins. Servs., Inc., 121 F.3d 630, 633 (11th Cir. 1997) ("As part of the 1980 amendment, Congress granted exclusive original jurisdiction over suits brought by or against the FCIC to the federal district courts."). The statutory notes to Section 1506(d) state that as part of the 1980 amendments to the Federal Crop Insurance Act, "[s]ubsec. (d). Pub. L. 96-365, § 103(2), substituted provision granting exclusive original jurisdiction to district courts of the United States . . . for prior grant to any State court of record having general jurisdiction or any United States district court."

By granting district courts exclusive jurisdiction over suits against the FCIC, Section 1506(d) deprives this Court of any concurrent jurisdiction over Acceptance's taking claim, which is based upon the Tucker Act, 28 U.S.C. § 1491(a). In addition to Texas Peanuts,

numerous other decisions of this Court, the Federal Circuit, and the Court of Claims have addressed similar withdrawals of Tucker Act jurisdiction. As the Federal Circuit noted in Texas Peanuts, Congress withdrew Tucker Act jurisdiction over claims arising under the Medicare Act by enacting 42 U.S.C. § 405(g), which states that such claims "shall be brought in the district court of the United States" where the plaintiff resides. Texas Peanuts, 409 F.3d at 1373 (citing Wilson v. United States, 405 F.3d 1002 (Fed. Cir. 2005)).

In Puget Sound Power & Light Co. v. United States, 23 Cl. Ct. 46, 57 (1991), the Claims Court ruled that it lacked jurisdiction pursuant to the Tucker Act over the plaintiff's claims "because Congress has expressly placed jurisdiction over those claims in another forum under the Northwest Power Act." 23 Cl. Ct. at 56. The Northwest Power Act, 16 U.S.C. § 839f(e)(5), provided that "[s]uits to challenge the constitutionality of this chapter . . . shall be filed in the United States court of appeals [for the Ninth Circuit]" (emphasis added). Puget Sound P & L, 23 Cl. Ct. at 51. Here, Section 1506(d) grants district courts exclusive jurisdiction over "all" suits against the FCIC. 7 U.S.C. § 1506(d).

In Puget Sound P & L, the Claims Court explained that "[t]he rule that a remedy furnished by a precisely drawn, detailed statute preempts a more general statute is especially applicable to the general remedy provided by the Tucker Act, because the legal doctrine that consent to suit against the sovereign must be strictly construed overrides the doctrine that repeals by implication are not favored." Puget Sound P & L, 23 Cl. Ct. at 57 (citing Harris v. United States, 841 F.2d 1097, 1100-01 (Fed. Cir. 1988) and John Muir Mem. Hosp., Inc. v. United States, 221 Ct. Cl. 843, 846, (1979)).

The Federal Circuit applied this same principle in Harris. The court interpreted the Civil Service Reform Act, which provided that procedures for resolving grievances that arose under collective bargaining agreements "'shall be the exclusive procedures for resolving

grievances.'" 841 F.2d at 1100 (quoting 5 U.S.C. § 7121(a)(1)). The Federal Circuit held that because these grievance procedures were exclusive, "resort to the Tucker Act is precluded. Jurisdiction under it is withdrawn, even though it is never mentioned. . . . the provisions of the Civil Service Reform Act cited above do effect a repeal by implication of the provisions of the Tucker Act " Id. 1100-01. The court stated that United States v. Erika, Inc., 452 U.S. 201 (1982), was "a previous instance where new provisions [for judicial review pursuant to the Medicare statute] superseded, and in part suppressed, a previously existing Tucker Act liability sub silentio," and also commented that "when it is a question of impliedly repealing a preexisting Tucker Act remedy against the government by something more specific, and different, yet at least in that context, repeal by implication is highly respectable and not a novelty." Id. 1101 (also citing United States v. Fausto, 484 U.S. 439, 447 (1988)).

The Court of Claims reached a similar result in Fiorentino v. United States, 221 Ct. Cl. 545, 607 F.2d 963 (1979). In Fiorentino, the plaintiff, a lawyer employed by the Housing and Urban Development Department, contended that he had been "deprived of both property and liberty without due process of law." 607 F.2d at 965. The Court of Claims ruled that "we think that consent [to be sued] is withdrawn by the Privacy Act of 1974, 5 U.S.C. § 552a. It provides an administrative remedy for one so aggrieved, and if he is unsuccessful with that, he can sue in the U.S. District Court, including a suit for correction of his record. 5 U.S.C. § 552a(g)(1)." Id. at 969. The court noted several examples of statutes that implicitly withdrew Tucker Act jurisdiction by granting exclusive jurisdiction to another forum than the Court of Claims for specific claims:

> instances of partial repeal of the Tucker Act by laws expressly directing litigation of some class or kind elsewhere are common. A recent example is 42 U.S.C. § 1395oo(f) which repeals by implication whatever consent

> previously existed to Tucker Act suits by Social Security Act health care providers for expense reimbursement. See Whitecliff, Inc. v. United States, 536 F.2d 347, 210 Ct. Cl. 53 (1976), cert. denied, 430 U.S. 969 (1977). . . . in Matson Navigation Co. v. United States, 284 U.S. 352 (1932), the Suits in Admiralty Act of 1920 was held to withdraw by implication the portion of the Tucker Act which consented to Admiralty suits against the United States, although suits of this kinds had been common in Court of Claims jurisprudence and clearly consented to. It appears that the rule of strict construction of the consent to be sued overrides the rule that repeals by implication are disfavored.

Id. at 969-70. The court also relied upon Brown v. General Servs. Admin., 426 U.S. 820 (1976). 607 F.2d at 969. In Brown, the Supreme Court observed that "the Court has held that a precisely drawn, detailed statute pre-empts more general remedies," and ruled that the Equal Employment Act of 1972 repealed by implication potential remedies against the United States, including the Tucker Act, for racial discrimination. 426 U.S. at 834.

In John Muir, the Court of Claims stated that "[a] statute consenting to suit in another tribunal is readily to be interpreted as withdrawing consent to suit in the Court of Claims. . . . Where Congress wishes to preserve jurisdiction in the Court of Claims when later consenting to suits elsewhere, it is careful to say that Court of Claims jurisdiction survives, as in 28 U.S.C. § 1346(a) (tax refund claims)." 221 Ct. Cl. at 846. Acceptance cannot identify any change that was made to the Tucker Act or to any other statute after the adoption of Section 1506(d) in 1980 that preserved this Court's jurisdiction over takings claims against the FCIC.

7 U.S.C. § 1506(d) expressly provides that the exclusive forum for any suit challenging actions taken by RMA is Federal district court rather than this Court. For this reason, the Court should dismiss plaintiff's complaint for lack of subject matter jurisdiction.

### B. Plaintiff Has Failed To Meet The Express Statutory Requirement That It Exhaust Its Administrative Remedies Before Filing Suit In District Court

#### 1. 7 U.S.C. § 6912(e) Mandates That Exhausting Administrative Remedies Is A Jurisdictional Prerequisite To Filing Suit

There is a second reason independent of 7 U.S.C. § 1506(d) that the Court should dismiss plaintiff's complaint for lack of subject matter jurisdiction: plaintiff has failed to exhaust its administrative remedies before filing this suit. The FCIC's regulations provide the following administrative procedure for resolving disputes:

> If the company believes that the [FCIC] has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, it may request the Deputy Administrator of Insurance Services to make a final administrative determination addressing the disputed action. . . . All requests for a final administrative determination must be in writing and submitted within 45 days after receipt after the disputed action.

7 C.F.R. § 400.169(a). The FCIC's regulations further provide that "[a]ppealable final administrative determinations of the Corporation under paragraph (a) or (b) of this section may be appealed to the [Department of Agriculture] Board of Contract Appeals in accordance with the provisions of subtitle A, part 24 of title 7 of the Code of Federal Regulations." 7 C.F.R. § 400.169(d). The SRA states that 7 C.F.R. chapter IV is "incorporated into this Agreement by reference." Def. App.[5] 375.

Unlike in certain situations, in which the Court can exercise its discretion to waive a plaintiff's failure to exhaust its administrative remedies, here, plaintiff was expressly required by statute to exhaust the administrative remedy provided in 7 C.F.R. § 400.169 before filing this suit. The Department of Agriculture Reorganization Act of 1994, Pub. L. 103-354, Title II, § 212,108 Stat. 3210, requires that "a person shall exhaust all administrative appeal

---

[5] "Def. App." refers to defendant's appendix in support of its renewed motion to dismiss or, in the alternative, for summary judgment, which has been filed in paper form.

procedures established by law before the person may bring an action in a court of competent jurisdiction" against the Department of Agriculture or one of its agencies, such as FCIC or RMA. 7 U.S.C. § 6912(e) (emphasis added).

In Ace Property & Casualty Ins. Co. v. United States, 60 Fed. Cl. 175, 184 (2004), aff'd, this Court dismissed for lack of subject matter jurisdiction the plaintiff's claim that FCIC had violated the terms of the SRA. The Court ruled that the plaintiff had failed to exhaust its administrative remedies, stating that "the statutory provision mandating exhaustion contained in 7 U.S.C. § 6912(e) is explicit. Congress' intent in enacting the [Federal Crop Insurance Act] was to require plaintiffs to exhaust all administrative remedies before bringing suit." Similarly, in Farmers & Merchants Bank of Eatonton, Georgia v. United States, 43 Fed. Cl. 38, 39 (1999), the Court dismissed the plaintiff's claim for failure to exhaust administrative remedies, stating that "the plain language of [7 U.S.C. § 6912(e)] demonstrates a clear legislative intent" to require exhaustion of administrative appeals "before filing suit in any court."

Four Federal circuit courts of appeals have also ruled that 7 U.S.C. § 6912(e) requires a plaintiff to exhaust administrative remedies before suing the Department of Agriculture in Federal district court. Deaf Smith County Grain Processsor, Inc. v. Glickman, 162 F.3d 1206, 1214 (D.C. Cir. 1998); Bastek v. Federal Crop Ins. Corp., 145 F.3d 90, 94-95 (2d Cir. 1998); Kleissler v. United States Forest Service, 183 F.3d 196, 200-01 (3d Cir. 1999); Gold Dollar Warehouse, Inc. v. Glickman, 211 F.3d 93, 98 (4th Cir. 2000).

Numerous Federal district courts have interpreted § 6912(e) similarly in cases asserting claims against FCIC. Ace Property & Casualty Ins. Co. v. Federal Crop Ins. Corp. and Risk Management Agency, 357 F. Supp. 2d 1140, 1150 (2005) ("§ 6912(e) exhaustion is jurisdictional"); American Growers, 210 F. Supp. 2d at 1092; Rain & Hail, 229 F. Supp. 2d

710 at 715-16; Farmers Alliance Mut. Ins. Co. v. FCIC, 2001 WL 30443 (D. Kan., Jan. 3, 2001).[6]

In Bastek, the United States Court of Appeals for the Second Circuit distinguished between statutory exhaustion requirements, which "courts are not to dispense with," and common law or judicial exhaustion doctrine, which permits courts, in their discretion, to waive administrative exhaustion in certain circumstances, such as when a plaintiff alleges that exhaustion would be futile because the agency has predetermined the issue. Bastek, 145 F.3d at 94. The court noted that "[t]he Supreme Court has directed that '[w]here Congress specifically mandates, exhaustion is required.'" Id. (quoting McCarthy v. Madigan, 503 U.S. 140, 144 (1992)).[7] The Second Circuit also observed that when a court is "[f]aced with unambiguous statutory language requiring exhaustion of administrative remedies, '[w]e are not free to rewrite the statutory text.'" 145 F.3d at 94 (quoting McNeil v. United States, 508 U.S. 106, 111 (1993)).

Applying these principles of the exhaustion doctrine to interpret § 6912(e), the Second Circuit concluded that "the statutory provision mandating exhaustion contained in

---

[6] Other district courts have also determined that Section 6912(e) mandates exhaustion of administrative remedies before filing suit against other agencies within the Department of Agriculture. Gilmer-Glenville Ltd. Partnership v. Farmers Home Admin., 102 F. Supp. 2d 791, 794 (N.D.Ohio 2000) ("[T]he failure to exhaust administrative remedies in this context is not an affirmative defense, but rather a jurisdictional requirement to filing suit in federal court."); Utah Shared Access Alliance v. Wagner, 98 F. Supp. 2d 1323, 1333 (D.Utah 2000) ("Plaintiffs' failure to exhaust existing administrative remedies [under 7 U.S.C. § 6912(e)] deprives this court of competent subject matter jurisdiction."); Calhoun v. USDA Farm Service Agency, 920 F.Supp. 696, 702 (N.D.Miss.1996) ("[7 U.S.C. § 6912(e) ] imposes upon the plaintiff a jurisdictional prerequisite to the filing of suit against FSA.").

[7] The Federal Circuit has similarly noted that "[w]hen Congress expressly requires exhaustion of administrative remedies before suit is brought, exhaustion is, of course, mandatory." Martinez v. United States, 333 F.3d 1295, 1305 (Fed. Cir. 2003) (en banc) (citing McCarthy, 503 U.S. at 144).

7 U.S.C. § 6912(e) is explicit. Indeed, as one court has observed, '[i]t is hard to imagine more direct and explicit language requiring that a plaintiff suing the Department of Agriculture, its agencies, or employees, must first turn to any administrative avenues before beginning a lawsuit.'" 145 F.3d at 94-95 (quoting Gleichman v. Department of Agriculture, 896 F. Supp. 42, 44 (D. Maine 1995)). Thus, Section 6912(e) requires a plaintiff to exhaust its administrative remedies as a jurisdictional prerequisite to filing suit in Federal district court.

### 2. Acceptance Failed To Exhaust Administrative Remedies To Challenge RMA's Refusal To Waive Restrictions On Transferring Policies

Section 6912(e) bars Acceptance from pursuing its claim in any court, because it has failed to exhaust its administrative remedies to protect its alleged right to transfer American Growers' MPCI policies to Rain and Hail. "'In construing the true nature of a claim we [this Court] look[s] to the real underlying claim, not how the plaintiff frames it.'" Ace Property, 60 Fed. Cl. at 182 (quoting Puget Sound Energy, Inc. v. United States, 47 Fed. Cl. 506, 510 (2000)). Although plaintiff has asserted a taking claim, the specific property interest that Acceptance asserts was taken by RMA – its alleged right to transfer American Growers' in-force MPCI policies to Rain and Hail – is governed by the SRA between American Growers and FCIC. Thus, Acceptance was required by 7 U.S.C. § 6912(e) to pursue its administrative remedies before the Department of Agriculture Board of Contract Appeals ("AgBCA") pursuant to 7 C.F.R. § 400.169, which states that an insurer may appeal to the AgBCA any "action that is not in accordance with the provisions of the Standard Reinsurance Agreement."

Acceptance's pleadings and the uncontroverted facts demonstrate that the property interest that Acceptance asserts was taken is governed by the SRA. Plaintiff pleaded that the SRA governs the reinsurance relationship between FCIC and crop insurance providers such as

American Growers. Am. Compl. ¶ 6. The SRA, however, has much broader effect than a typical reinsurance agreement between two private parties. The first paragraph of the SRA that was in effect between American Growers and FCIC at the time of the proposed transaction with Rain and Hail states that the SRA is a "cooperative financial assistance agreement between FCIC and the Company to deliver eligible crop insurance." DPFUF[8] ¶¶ 11-14 (emphasis added). John Joyce, the chairman of Rain and Hail at the time of the proposed transaction with Acceptance, testified during his deposition that the SRA "sets the terms and conditions under the entire operation of the MPCI [Multi Peril Crop Insurance] program under that cooperative agreement that someone mentioned earlier and lays out, along with the references to various attachments, plan of operation, exactly how the program is going to function." DPFUF ¶ 70.

The SRA required American Growers to use crop insurance contracts, standards, procedures, methods, and instructions "as issued or approved by FCIC," and also required American Growers to comply with "all bulletins, handbooks, instructions and procedures of FCIC." DPFUF ¶¶ 33-34 (emphasis added). The 2002 FCIC Crop Insurance Handbook, which was in effect at the time of the proposed transaction, states that "Insurance Providers that have a Standard Reinsurance Agreement (SRA) with FCIC must use this handbook or comparable procedures approved by RMA to deliver MPCI coverage." DPFUF ¶ 40 (emphasis added). The Crop Insurance Handbook was incorporated into the SRA, because the "Definitions" section of the SRA defined "Agreement" as meaning the Standard Reinsurance Agreement and "all referenced documents." DPFUF ¶ 15.

Section 4.C(9) of the Crop Insurance Handbook, which is incorporated into the SRA,

---

[8] "DPFUF" refers to defendant's proposed findings of uncontroverted fact, filed herewith.

only permits the transfer of MPCI policies from one insurer to another within 45 days after the cancellation date, which is the date by which the policyholder or insurer must cancel an MPCI policy. DPFUF ¶¶ 17, 41-44. Unless canceled, MPCI policies renew for the subsequent crop year. DPFUF ¶ 17; 7 C.F.R. § 457.8. Once the cancellation date passes, or the sales closing date in the case of newly issued policies, then the in-force policies cannot be transferred from one insurer to another, as both Mr. Joyce and Acceptance's CEO, John Martin, testified. DPFUF ¶¶ 35, 70. In addition, Section 4.C(9) requires that each policy that is transferred must be individually canceled and rewritten by another insurer. Def. App. 3. Section 4.C(9) does not provide any procedure for transferring a block of policies. Id.

Acceptance asserts that RMA effected a taking by refusing to waive the SRA's prohibition on transferring American Growers' in-force policies to Rain and Hail. In its original complaint, Acceptance pleaded that on Monday, November 18, 2002, it entered into a "letter of intent setting forth the terms pursuant to which Rain and Hail would purchase certain insurance assets of American Growers." Compl.[9] ¶ 9. The letter of intent identifies the assets as including "In Force 2003 MPCI Policies," referring to American Growers' in-force Multi Peril Crop Insurance ("MPCI") policies, as well as "[a]ll renewal rights of MPCI policies under Seller's SRAs." Def. App. 300. September 30, 2002 was the principal sales closing date for the fall-seeded crops, so at the time of the proposed transaction in mid-November 2002, there were "massive numbers of fall[-]seeded winter wheat customers" whose policies could not be

[9] "Compl." refers to Acceptance's original complaint, filed December 9, 2003. In its first amended complaint, Acceptance replaced "certain insurance assets of American Growers" with "certain of Acceptance's assets." Am. Compl. ¶ 9 (emphasis added). Even if Acceptance could retract the admission in its original complaint that American Growers owned the MPCI policies, Acceptance's CEO testified during his deposition that American Growers owned the policies. DPFUF ¶¶ 44-45, 69.

transferred to another insurer without a waiver from RMA. DPFUF ¶¶ 97-98.

Acceptance also pleaded that RMA effected a taking of "the American Growers insurance assets" on Friday, November 22, 2002 when RMA's Administrator, Ross Davidson, "rejected the proposed Rain and Hail/Acceptance transaction." Compl. ¶¶ 13, 22. However, what Acceptance describes as a "rejection" by RMA is more accurately described as a refusal to waive the SRA's restrictions on transferring in-force policies. Mr. Joyce and other Rain and Hail representatives met with Mr. Davidson and other RMA representatives on Wednesday, November 20, 2002 to discuss the transaction proposed in the letter of intent, and held further discussions by telephone on Thursday and Friday, November 21 and 22, 2002. DPFUF ¶¶ 89-93. Rain and Hail requested that RMA waive the prohibition on transferring American Growers' in-force policies to Rain and Hail. DPFUF ¶¶ 94-103. As Mr. Joyce testified, "[w]e needed to make sure that we could handle the in-force policies that were already written and on the books and that did require RMA cooperation and/or waiver, whatever you wish to call it. And that is contained in 4.C(9), yes." DPFUF ¶ 94.

Mr. Joyce also testified that RMA was prepared to waive Section 4.C(9), so long as Rain and Hail agreed to assume the liability for all previous years for all policies transferred from American Growers to Rain and Hail. DPFUF ¶ 99, 108-11 . However, Rain and Hail was unwilling to expose its shareholders to these liabilities. DPFUF ¶¶ 108, 112. As a result, Rain and Hail chose not to consummate the proposed transaction with Acceptance. DPFUF ¶ 112.

If Acceptance wished to challenge RMA's refusal to grant the waiver that Rain and Hail requested on behalf of both parties to the proposed transaction, then Acceptance was required to pursue the administrative remedies available to its wholly-owned subsidiary, American Growers, by challenging RMA's decision as "not in accordance with the provisions of the Standard

Reinsurance Agreement." 7 C.F.R. § 400.169(a). American Growers was a signatory to the SRA for the 2002 and 2003 reinsurance years. DPFUF ¶¶ 55, 57. It was American Growers' MPCI policies that Acceptance sought to sell to Rain and Hail, and that Acceptance now asserts it owned. DPFUF ¶¶ 60-61; Compl. ¶¶ 10, 22. Yet American Growers never timely submitted to FCIC or RMA pursuant to 7 C.F.R. § 400.169 a written request for a final administrative decision refusing to waive Section 4.C(9). Nor did American Growers ever pursue any appeal before the AgBCA, no doubt because Acceptance's management understood, as Mr. Martin testified, that the SRA clearly barred the transfer of in-force policies. The fact that Acceptance did not have any plausible theory to pursue in the administrative appeal process, however, does not give it any basis to assert a taking claim when the right that it asserts is governed by the SRA.

Because Acceptance failed to exhaust the administrative remedies available to American Growers, as mandated by 7 U.S.C. § 6912(e), this Court possesses no subject matter jurisdiction over Acceptance's claim that RMA effected a taking of American Growers' MPCI policies. The Federal Circuit has stated that "'[w]hen ... a 'specific and comprehensive scheme for administrative and judicial review' is provided by Congress, the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is preempted.'" Wilson, 405 F.3d at 1015 (quoting St. Vincent's Med. Ctr. v. United States, 32 F.3d 548, 549-50 (Fed. Cir.1994) and citing United States v. Fausto, 484 U.S. 439, 454-55 (1988)). Allowing Acceptance to pursue its taking claim before it has exhausted all administrative remedies would reward what the Supreme Court has condemned as "the deliberate flouting of administrative processes." McKart v. United States, 395 U.S. 185, 194-95 (1969).

The Court is compelled to heed the statutory exhaustion requirement of 7 U.S.C.

§ 6912(e), even if the result of dismissing the complaint is that the time has expired for Acceptance to appeal the actions that the RMA allegedly took on November 20-22, 2002. As the Second Circuit stated in Bastek:

> We are aware that, having failed to pursue their administrative remedies initially, plaintiffs are barred by the applicable statutes of limitations from pursuing them now. However, the choice to bring suit in the district court rather than exhausting the required administrative remedies – or, indeed, pursuing *both* remedies at the same time as a precaution, as litigants often do, in the event that it is determined that exhaustion is required – was entirely plaintiffs' own.

145 F.3d at 95 (underlining added); Deaf Smith County Grain Processsor, 162 F.3d at 1214 ("by neglecting to formally appeal . . . appellant failed to exhaust its administrative remedies. Its action, at least with respect to this claim, is barred," citing 7 U.S.C. § 6912(e)). The Court should dismiss this suit because Acceptance failed to exhaust the administrative appeals procedures provided in 7 C.F.R. § 400.169, as Congress mandated in 7 U.S.C. § 6912(e).

## III. In The Alternative, The Court Should Grant Summary Judgment, Because Acceptance Cannot Prove The Elements Of A Compensable Taking

If the Court determines that it possesses subject matter jurisdiction over this suit, then it should grant defendant summary judgment, because as a matter of law, Acceptance cannot prove the elements of a Governmental taking compensable pursuant to the Fifth Amendment. The Federal Circuit has developed a two-part test to evaluate claims that a governmental action constitutes a taking of private property without just compensation. Maritrans Inc. v. United States, 342 F.3d 1344, 1351 (Fed. Cir. 2003) (citing M & J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995)); Chancellor Manor v. United States, 331 F.3d 891, 901-02 (Fed. Cir. 2003).

First, the Court must determine whether a protected property interest existed, or in other words, that "the use interest proscribed by the governmental action was part of the owner's title

to begin with." M & J Coal, 47 F.3d at 1154 (citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992)). Second, if the claimant can establish the existence of a protected property interest for purposes of the Fifth Amendment, the Court must then determine whether the governmental action at issue was a compensable taking of that property interest. Chancellor Manor, 331 F.3d at 902 (citing M & J Coal, 47 F.3d at 1153-540. The Federal Circuit has stated that when considering whether any compensable taking occurred, "it is important to decide at the outset whether the alleged taking was 'categorical' or not." American Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (citing Rith Energy, Inc. v. United States, 247 F.3d 1355, 1362 (Fed. Cir. 2001) (on rehearing)).

Because plaintiff cannot prove that it held a compensable property interest in American Growers' MPCI policies and other assets, or that RMA effected any compensable taking, the Court should grant summary judgment to defendant.

**A. Acceptance Could Not Hold Any Compensable Property Interest In The Unrestricted Transfer Of American Growers' MPCI Policies**

Acceptance has pleaded that the property that was allegedly taken by RMA was American Growers' MPCI policies and the other assets identified in the November 18, 2002 letter of intent. Am. Compl. ¶¶ 10, 17, 24. Acceptance alleges that RMA effected the taking by "rejecting the proposed Rain and Hail/Acceptance transaction," which allegedly rendered valueless the assets. Id. ¶ 21. Even if American Growers held such a property interest in its MPCI policies, Acceptance did not hold any property interest in those policies that is compensable pursuant to the Fifth Amendment, because Acceptance did not own those policies. Acceptance is an insurance holding company, and American Growers was one of its wholly-owned operating subsidiaries, a separate legal entity with its own assets and liabilities. DPFUF ¶¶ 47, 51.

Acceptance amended its original complaint to try to retract the numerous admissions in its original complaint that the property it claims was taken belonged to American Growers, not Acceptance. Acceptance replaced numerous references to "American Growers' insurance assets" with references to "Acceptance's assets," as is apparent from the redlined version of its amended complaint. Def. App. 21-23 (¶¶ 9-11, 17, 21, 24, 27).

These amendments do not erase the admissions made by Acceptance in its original complaint that American Growers, not Acceptance, owned the property that Acceptance asserts was taken from it by RMA. Even if Acceptance could retract these admissions, its own CEO, John Martin, contradicted in his September 2005 deposition Acceptance's April 2005 first amended complaint, in which it pleads that it owned American Growers' insurance policies and the other assets that Acceptance claims were taken by the Government. Am. Compl. ¶¶ 9-10, 17, 19, 21, 24, 27. Mr. Martin testified that the policies were carried as assets on American Growers' financial statements. DPFUF ¶¶ 60-61, 85. Because Acceptance did not own American Growers' MPCI policies, it is precluded from asserting any property interest in the assets that is compensable pursuant to the Fifth Amendment.

When Acceptance amended its complaint, it also sought to recharacterize the nature of the proposed transaction, pleading for the first time that "[a]lthough structured as a sale of assets, the proposed transaction between Acceptance and Rain and Hail was, in fact, a sale by Acceptance of its wholly-owned subsidiary." Am. Compl. ¶ 11. The amendment appears to reflect Acceptance's recognition that it could sell the stock of its subsidiary, but that only American Growers, not Acceptance, could sell assets owned by American Growers.

Acceptance's allegation that the transaction was a sale of American Growers was contradicted by Mr. Martin as well as by John Joyce, Rain and Hail's chairman, who both

testified that the proposed transaction was intended to be an asset purchase, not a sale of American Growers as a corporate entity. DPFUF ¶¶ 72-73. Mr. Martin testified that the letter of intent proposed a transaction whereby Rain and Hail would "purchase a book of policies, not a corporate structure." DPFUF ¶ 73. Because Acceptance did not own the assets that it claims were taken, it cannot satisfy the first element of a taking claim: an interest in the property that was taken.

Moreover, neither American Growers nor Acceptance held the specific property interest that Acceptance contends was taken by RMA: Acceptance's alleged right to transfer American Growers' in-force MPCI policies to Rain and Hail. Am. Compl. ¶¶ 10, 17, 24. Any property interest that Acceptance may have held in American Growers' MPCI policies was determined by the SRA, including Section 4.C(9) of the Crop Insurance Handbook and the other documents incorporated into the SRA.

The Federal Circuit has cautioned that "'the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim.'" Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001) (quoting Sun Oil Co. v. United States, 215 Ct. Cl. 716, 572 F.2d 786, 818 (1978)). The court explained further that "[t]aking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity. Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of private property rights." Hughes Communications, 271 F.3d at 1070; Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir. 2002), cert. denied, 539 U.S. 925 (2003)) (no taking claim arose

because the plaintiffs "retained the full range of remedies associated with any contractual property rights they possessed").

Like the oil and lease agreement in Sun Oil, and the satellite launch agreement in Hughes Communications, the SRA between American Growers and FCIC determined whether American Growers or Acceptance held any rights to transfer the MPCI policies issued by American Growers, which FCIC approved and reinsured pursuant to the terms of the SRA. It is uncontroverted that Section 4.C(9) of the Crop Insurance Handbook did not permit the transfer of in-force policies from one insurer to another after the cancellation or sales closing date had passed. DPFUF ¶¶ 41-44. Because Section 4.C(9) was incorporated into the SRA, the SRA restricted American Growers' ability to transfer the policies. The SRA precluded the formation of the property interest that Acceptance asserts, which is an unrestricted right to transfer American Growers' in-force MPCI policies to Rain and Hail.

Plaintiff's claim is very similar to the claim of the plaintiff in American Pelagic, who asserted that legislation "effected a taking of the use" of its fishing vessel in coastal waters claimed by the United States. 379 F.3d at 1374. In American Pelagic, the Federal Circuit ruled that because Congress had passed legislation asserting the United States' sovereignty over a two-hundred-mile coastal zone, no right to use a ship to fish in this zone was inherent in the plaintiff's ownership of a ship acquired after the legislation was passed. Id. at 1379, 1381. The court held that because the right to fish was not a "stick in the bundle of rights" acquired by the ship's owner, the plaintiff "did not suffer the loss of a property interest for purposes of the Takings Clause when its Atlantic mackerel and herring permits were revoked." Id. at 1377, 1381.

Similarly, the MPCI policies that Acceptance sought to sell to Rain and Hail were issued

by American Growers subject to the terms and restrictions of the SRA, which incorporated Section 4.C(9) of the Crop Insurance Handbook. By its terms, the SRA required American Growers to enter into the SRA before issuing MPCI policies that were reinsured by FCIC, and American Growers renewed the SRA before each subsequent crop insurance year began. DPFUF ¶¶ 11-13. The Federal Circuit has stated that "[t]he rights to sell, assign, or otherwise transfer are traditional hallmarks of property." Conti v. United States, 291 F.3d 1334, 1341 (Fed. Cir. 2002). Neither American Growers nor Acceptance could hold any property interest that entitled them to transfer American Growers' MPCI in-force policies to another insurer. Thus, even if Acceptance owned American Growers' MPCI policies, Acceptance cannot prove that it owned any property interest in the policies that is compensable pursuant to the Fifth Amendment.

**B. RMA Did Not Effect A Compensable Taking By Refusing To Grant The Waivers Requested By Rain and Hail**

Acceptance is also unable to prove the second element of its taking claim: that RMA's decision not to waive the restrictions on a mass transfer of American Growers' in-force MPCI policies to Rain and Hail effected a taking of Acceptance's property.

**1. Acceptance Cannot Prove That RMA Effected A Categorical Taking**

Acceptance has pleaded a categorical taking, asserting that RMA's alleged "rejection of the proposed transaction" rendered "valueless" Acceptance's property. Am. Compl. ¶ 21. As a matter of law, Acceptance cannot prove that RMA effected a categorical taking.

The Supreme Court has stated that there are only two categories of categorical takings: "a permanent physical invasion" of property, and "regulations that completely deprive an owner of '*all* economically beneficial us[e]'" of property. Lingle v. Chevron U.S.A., Inc., ____ U.S. ____, 125 S. Ct. 2074, 2081 (2005). Acceptance does not allege that RMA physically occupied

or took possession of the assets, but it does claim that it has been deprived of all economically beneficial use of American Growers' MPCI policies and other assets, which Acceptance asserts RMA has rendered "valueless." Am. Compl. ¶ 11.

Once again, Acceptance's pleading is at odds with the uncontroverted facts. RMA did not "reject" the proposed transaction, as Acceptance alleges. Am. Compl. ¶¶ 21, 24. RMA was prepared to waive Section 4.C(9) to allow a mass transfer of all American Growers' MPCI policies to Rain and Hail, so long as Rain and Hail agreed to assume all liability for the policies, including for all prior crop insurance years. DPFUF ¶¶ 94-112. RMA offered as an alternative that it would assume the liabilities for the 2002 crop insurance year, which was expected to be a year with large losses, if Rain and Hail would agree to assume the liability for 2001 and prior crop insurance years. DPFUF ¶ 118; Def. App. 280. Rain and Hail chose not to consummate the proposed transaction with Acceptance because Rain and Hail did not want to assume any liability for the American Growers' MPCI policies. DPFUF ¶¶ 108, 112.

RMA's decision not to waive the restrictions on transferring American Growers' MPCI policies on the terms proposed by Acceptance and Rain and Hail did not render "valueless" American Growers' MPCI policies or any other assets identified in the letter of intent. RMA simply informed Rain and Hail that it would not grant the waivers requested. Def. App. 289-90. RMA did not take possession or assume control of American Growers' MPCI policies or any other assets that are the basis of Acceptance's taking claim. Def. App. 300, 487-91. RMA only refused to waive Section 4.C(9), which barred one very specific use of American Growers' MPCI policies: transferring them to Rain and Hail on the terms proposed in the letter of intent.

Because RMA did not prohibit other possible uses of American Growers' MPCI policies, it did not effect a categorical taking of the property. As the Federal Circuit stated in <u>American</u>

Pelagic, the fishing vessel "itself was not taken or destroyed; rather, restrictions were placed on its use." 379 F.3d at 1375. Here, the restrictions on transfer were already in place in the SRA, and RMA merely refused to waive the restrictions. Def. App. 3.

It was the Nebraska Department of Insurance, not RMA or any other Federal agency, who entered an Order of Supervision against American Growers later on November 22, 2002 declaring that American Growers was in "hazardous financial condition" as a result of the large third-quarter losses reported in Acceptance's Form 10-K that was filed with the United States Securities and Exchange Commission on November 19, 2002. DPFUF ¶¶ 121-24. The Order of Supervision stated that "during the period of supervision, American Growers shall not undertake, engage in, commit to initiate, accept or renew any insurance business." Def. App. 488. The Order of Supervision also directed American Growers not to "[d]ispose of, convey, or encumber any of its assets or its business in force" or to "transfer any of its property" without the prior approval of the Nebraska Department of Insurance. Def. App. 489.

During the time after RMA informed Rain and Hail that RMA would not waive its restrictions on transferring MPCI policies without an assumption of liability by Rain and Hail, but before the Order of Supervision was entered, Acceptance and American Growers were in the same position as the plaintiff in Conti. Mr. Conti asserted that the Government had effected a categorical taking of his fishing vessel because it could only be used "for the harvesting of swordfish in the Atlantic Swordfish Fishery using drift gillnets and that the 1999 ban made that use no longer possible." 291 F.3d at 1343. The Federal Circuit ruled that "[t]he law, however, does not recognize a taking in such circumstances." Id.

The court relied upon Andrus v. Allard, 444 U.S. 51, 54 (1979), in which the Supreme Court ruled that legislation to protect eagles did not effect a categorical taking of parties who

were engaged in the trade of Indian artifacts because "'it is crucial that appellees retain the right to possess and transport their property, and to donate or devise the protected birds.'" Conti, 291 F.3d at 1343-44 (quoting Andrus, 444 U.S. at 65-66). The Federal Circuit held that "Mr. Conti's continuing ability 'to sell the vessel and the gear, fish in a different fishery, or put both the nets and the vessel to other uses,' Conti, 48 Fed. Cl. at 537, precluded a finding that a regulatory taking had occurred." 291 F.3d at 1343.

Similarly, RMA's decision not to grant the waivers requested by Rain and Hail did not preclude the potential that Acceptance might find another purchaser for American Growers' MPCI policies who would be willing to assume liability for the prior years, as required by RMA. It was the Nebraska Department of Insurance, not RMA, who entered the Order of Supervision that prevented Acceptance from pursuing other opportunities to sell the American Growers' MPCI policies. Def. App. 487-91.

**2. Acceptance Cannot Prove A Noncategorical Taking**

Acceptance is also unable as a matter of law to prove that RMA effected a noncategorical taking. To determine whether the Government has effected a noncategorical taking, the Court must undertake the "fact-based inquiry" established by the Supreme Court in Penn Central Transp. Co. v. City of New York, 438 U.S. 104 (1978). American Pelagic, 379 F.3d at 1372. "The three Penn Central factors are (i) the character of the governmental action, (ii) the economic impact of the action on the claimant, and (iii) the extent to which the action interfered with the claimant's reasonable investment-backed expectations." Id. These three factors are addressed in turn below.

First, the character of RMA's action is not consistent with a taking, because RMA acted to promote the public good when it enforced the SRA's restrictions on transferring MPCI

policies. "'A "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government . . . than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.'" Rose Acre Farms, Inc. v. United States, 373 F.3d 1177, 1191 (Fed. Cir. 2004) (quoting Penn Central, 438 U.S. at 124).

Ross Davidson, RMA's Administrator at the time of the proposed transaction, testified that he considered that granting the waivers requested by Rain and Hail would have numerous harmful effects. Def. App. 57-85. One of RMA's biggest concerns was that permitting a mass transfer of all American Growers' MPCI policies to Rain and Hail would have concentrated the lowest risk producers with Rain and Hail and the highest risk producers with other insurers, which would undermine RMA's goal of dispersing risk across all crop insurance providers. Def. App. 198-202. Rain and Hail had informed RMA during their discussions that Rain and Hail did not plan on retaining some of American Growers' agents. Id.. Because farmers usually form stronger relationships with their agents than their insurance provider, RMA was concerned that Rain and Hail would drop higher-risk agents and the farmers they represented, forcing other insurers to assume higher-risk business, which might adversely affect the overall integrity of the crop insurance program that is delivered through the SRA. Id.

RMA believed that some farmers might lose coverage or encounter delays in processing what was expected to be a high volume of claims for the 2002 crop insurance year. Def. App. 71-72 (284:14-285:21). RMA was also concerned that other insurers, agents, or farmers who considered that their interests had been harmed by RMA waiving the SRA's restrictions on transfer of policies were very likely to sue RMA and FCIC, exposing taxpayers to the possibility of costly lawsuits. Def. App. 74 (294:12-17). Because of FCIC's "sue or be sued" clause, it is

subject to suit, and is sued frequently by both farmers and insurers, as witnessed in the cases cited above at pp. 10, 17-18. Thus, the character of RMA's decision not to grant the waivers requested by Rain and Hail was not that of a taking.

Acceptance also asserts that "following its rejection of the proposed transaction, the RMA enjoined American Growers from writing any new or renewal business and effectively put it out of business." Am. Compl. ¶ 18. RMA did not direct American Growers to stop selling new insurance contracts until late on Friday, November 22, 2002, after the Nebraska Department of Insurance had already determined that American Growers was in "hazardous financial condition." DPFUF ¶¶ 121, 125. RMA exercised its right pursuant to the SRA to Section V.J of the SRA to suspend American Growers' operations, because its financial condition rendered it unable to comply with the SRA's requirement to maintain "adequate financial resources." Def. App. 282, 401.

RMA's suspension of American Growers from writing new policies is analogous to a banking regulator exercising its powers to protect the assets of a failing bank. The Federal Circuit has stated that "'[i]t is well established that it is not a taking for the government to close an insolvent bank and appoint a receiver." Bailey, 341 F.3d at 1347 (quoting Branch v. United States, 69 F.3d 1571, 1575 (Fed. Cir. 1995), cert. denied, 519 U.S. 810 (1996)); Castle v. United States, 301 F.3d at 1342; Golden Pacific Bancorp v. United States, 15 F.3d 1066, 1073-74 (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); California Housing Sec., Inc. v. United States, 995 F.2d 955, 959 (Fed. Cir.), cert. denied, 506 U.S. 916 (1992). Similarly, because the Nebraska Department of Insurance had determined that American Growers was in hazardous financial conditions, it was not a taking for the RMA to prohibit American Growers from selling new insurance contracts, nor was it a taking for the RMA to refuse to reinsure any new insurance

contracts for the insurer. Def. App. 282.

Second, the economic impact of RMA's decision is unknowable. Acceptance asserts that "[a]bsent the exercise of Mr. Davidson's regulatory authority to reject the proposed sale, the transaction would have taken place," and Acceptance would have received at least $21.5 million for the assets identified in the letter of intent. Am. Compl. ¶ 17. However, the letter of intent stated that it was not a "binding obligation" on either Acceptance or Rain and Hail "to enter into or consummate the Proposed Transaction," and stated further that the parties' obligations "to consummate the Proposed Transaction shall be subject in all respects to the negotiation, execution, and delivery of a definitive agreement . . . and the satisfaction of the conditions contained in the definitive agreement." Def. App. 294. Both Mr. Martin and Mr. Joyce acknowledged that information might emerge during due diligence that would affect the value of the proposed transaction, or prevent it from being consummated. DPFUF ¶¶ 83. Thus, the value of the property interest claimed by Acceptance is too uncertain to support a taking claim.

Third, Acceptance could not have had any reasonable investment-backed expectations that American Growers could transfer its MPCI policies on any terms other than those set by the SRA through the Crop Insurance Handbook. American Growers knew the terms of the SRA when it issued the MPCI policies. Moreover, based upon American Growers' acquisition of the book of business of another crop insurer, IGF, in 2001, American Growers as well as Acceptance knew that RMA would only waive the restrictions on transferring policies if the acquiring company assumed liability for the policies for all prior years. DPFUF ¶¶ 104, 108. Rain and Hail also understood that it had been RMA's consistent practice to require that the acquiring insurer assume liability as a condition of RMA waiving the SRA's restrictions on transfer of MPCI policies. DPFUF ¶ 104. In these circumstances, neither American Growers nor

Acceptance had any reasonable investment-backed expectation that RMA would grant the waivers Rain and Hail requested.

Thus, Acceptance's assertion that RMA effected a taking is even weaker than the one asserted in Conti, because the Government changed the restrictions on fishing after Mr. Conti acquired his fishing vessel. Conti, 291 F.3d at 1343. Here, it was Rain and Hail and Acceptance, not RMA, who sought to change the procedures for transfer established by the SRA. In these circumstances, Acceptance is unable to prove a taking as a matter of law.

Finally, Acceptance's alleged expectations about its freedom to transfer American Growers' MPCI policies are unreasonable in light of FCIC's "cut-through" right pursuant to the SRA to transfer the policies to FCIC if the insurer was unable to fulfill its "obligations to any policyholder by reason of a directive or order duly issued by any Department of Insurance." DPFUF ¶ 37.

**CONCLUSION**

For the foregoing reasons, we respectfully request that the Court grant our motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick by Donald E. Kinner

MARK A. MELNICK
Assistant Director

s/ John H. Williamson

JOHN H. WILLIAMSON
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L St., N.W., 8th floor
Washington, D.C. 20530
Tel: (202) 307-0277
Fax: (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

DONALD A. BRITTENHAM, JR.
Attorney
Community Development Division
Office of the General Counsel
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

February 10, 2006

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 10th day of February, 2006, a copy of the foregoing "DEFENDANT'S RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ John H. Williamson