IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ACCEPTANCE INSURANCE COMPANIES. INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2794<br>Judge Wheeler |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

DONALD A. BRITTENHAM, JR.
Attorney
Department of Agriculture

May 8, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX TO DEFENDANT'S SUPPLEMENTAL APPENDIX . . . . . . . . . . . . . . . . . . . . . V

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Acceptance Has Failed To Demonstrate That This Court Possesses Jurisdiction Over A Taking Claim Against FCIC . . . . . . . . . . . . . . 4

A. The "Law Of The Case" Doctrine Does Not Bar The Court From Reconsidering Its August 13, 2004 Order . . . . . . . . . . . . . . . . . 4

B. Acceptance Misinterprets The Scope Of The SRA, Which Required Acceptance To Exhaust Administrative Remedies Before Filing This Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II. Acceptance Has Failed To Show Any Genuine Dispute Regarding Four Material Facts That Support Entry Of Summary Judgment For Defendant . . 11

A. Acceptance Did Not Own American Growers' Insurance Policies . . 11

B. The SRA Imposed Restrictions On Transferring American Growers' MPCI Policies . . . . . . . . . . . . . . . . . . . . . . . . 16

C. Acceptance Has Not Raised Any Other Genuine Issue of Material Fact That Precludes Entry of Summary Judgment For Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

1. RMA Took No Action That "Rendered Valueless" American Growers' MPCI Policies . . . . . . . . . . . . . . . . . . . . 21

2. Both Acceptance And Rain and Hail Expected RMA To Require Rain and Hail To Assume Past Years' Liabilities For American Growers' Policies . . . . 24

III. Acceptance's Motion For Summary Judgment Relies Upon Controverted Facts, And Does Not Meet The Requirements To Prove A Taking Claim . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

Pages

FEDERAL CASES

Aerolineas Argentinas v. United States,
77 F.3d 1564 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Air-Sea Forwarders, Inc. v. United States,
39 Fed. Cl. 434 (1997), aff'd, 166 F.3d 1170 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Ambase Corp. v. United States,
58 Fed. Cl. 32 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Augustine v. Principi,
343 F.3d 1334 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

Capital Parks, Inc. v. Southeastern Advertising and Sales Sys., Inc.,
30 F.3d 627 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conti v. United States,
291 F.3d 1334 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Global Credit Servs., Inc. v. AMISUB (Saint Joseph Hospital), Inc.,
244 Neb. 681, 508 N.W.2d 836 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Gould, Inc. v. United States,
67 F.3d 925 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,6

Hudson v. Principi,
260 F.3d 1357 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Hughes Communications Galaxy, Inc. v. United States,
271 F.3d 1060 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Lingle v. Chevron U.S.A., Inc.,
544 U.S. 528, 125 S. Ct. 2074 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Mendenhall v. Barber-Greene Co.,
26 F.3d 1573 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## TABLE OF AUTHORITIES

Pages

Monarch Painting Corp. v. United States,
16 Cl. Ct. 280 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

National Crop Ins. Servs. v. FCIC,
351 F.3d 346 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Office of Personnel Management v. Richmond,
496 U.S. 414 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Perkin-Elmer Corp. v. Computervision Corp.,
732 F.2d 888 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pixton v. B & B Plastics, Inc.,
291 F.3d 1324 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Smelser v. United States,
53 Fed. Cl. 530 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Sohm v. United States,
3 Cl.Ct. 74 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Suel v. Secretary of Health and Hum. Servs.,
192 F.3d 981 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Sun Oil Co. v. United States,
215 Ct. Cl. 716, 572 F.2d 786 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Texas Peanut Farmers v. United States,
409 F.3d 1370 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2,6-7

Tronzo v. Biomet, Inc.,
236 F.3d 1342 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. United States Smelting, Ref. & Mining Co.,
339 U.S. 196 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## TABLE OF AUTHORITIES

Pages

United States v. Turtle Mountain Band of Chippewa Indians,
222 Ct. Cl. 1, 612 F.2d 517 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Viet & Co. v. United States,
56 Fed. Cl. 30 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

FEDERAL STATUTE

7 U.S.C. § 1506(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2,4,6-7

FEDERAL REGULATIONS

7 C.F.R. § 24.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7 C.F.R. § 24.4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7 C.F.R. § 400.169 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

7 C.F.R. § 400.169(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7 C.F.R. § 400.169(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7 C.F.R. § 6912(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

MISC.

FCIC Crop Insurance Handbook, Section 4.C(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Insurance Industry Mergers & Acquisitions (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

www.chaseinsurancecompany.com . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# INDEX TO SUPPLEMENTAL APPENDIX

**Tab** **Page**

30 September 30, 2002 Quarterly Statement of American Growers to Nebraska Department of Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 542

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ACCEPTANCE INSURANCE COMPANIES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2794<br>Judge Wheeler |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

Plaintiff has failed to explain why the decision in Texas Peanut Farmers v. United States, 409 F.3d 1370 (Fed. Cir. 2005), does not compel this Court to reconsider its August 13, 2004 order denying defendant's motion to dismiss the complaint for lack of subject matter jurisdiction. Even if the law of the case doctrine applies to the August 13, 2004 order, Texas Peanut Farmers is a "contrary decision of the law applicable to the issues" by a "controlling authority" that justifies revisiting this Court's previous denial of defendant's motion to dismiss. Gould, Inc. v. United States, 67 F.3d 925, 927-28 (Fed. Cir. 1995). In Texas Peanut Farmers, the United States Court of Appeals for the Federal Circuit concluded that the "plain meaning" of Section 1506(d) of the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1506(d), was that "Congress granted district courts exclusive jurisdiction over claims against the FCIC." 409 F.3d at 1374 (emphasis added). The Federal Circuit recognized that Section 1506(d) is a broad "sue and be sued" provision that waives sovereign immunity for any type of claim against FCIC. 7 U.S.C. § 1506(d).

Plaintiff fails to address how the Federal Circuit's conclusion regarding the plain meaning of Section 1506(d) can be reconciled with this Court's August 13, 2004 order, which stated that "Section 1506(d) controls issues that arise under the Federal Crop Insurance Act, such as suits against the Corporation alleging violation of its duties." Order at 2 (emphasis added). Section 1506(d) does not limit its scope. Section 1506(d) grants Federal district courts "exclusive original jurisdiction" over "all suits" against FCIC, not just those that arise under the Federal Crop Insurance Act. 7 U.S.C. § 1506(d). In Texas Peanut Farmers, the Federal Circuit did not recognize any subset of "claims against FCIC," such as taking suits, to be excluded from the scope of Section 1506(d). "All suits" means all suits, including taking claims that name the United States as the defendant, rather than FCIC, the agency through whom the United States took the actions that Acceptance alleges effected a taking.

Even if the Court chooses not to alter its earlier ruling, Acceptance has failed to demonstrate that there is any genuine issue regarding at least two material facts, each of which presents an independent ground for granting summary judgment to defendant. First, there is no genuine issue of material fact that American Growers owned the insurance policies that Acceptance claims were taken by the Government. Acceptance bases its taking claim upon a purely legal argument, asserting that because American Growers was its wholly owned subsidiary, Acceptance held a compensable property interest to "realize the value" of assets that were owned by American Growers. Acceptance contends that defendant's argument that Acceptance did not own American Growers' assets is an "elevation of form over substance." Pl. Br. 11.

However, Acceptance does not cite a single case or present any factual evidence to support its bare assertion that Acceptance was the alter ego of American Growers, a Nebraska corporation that Acceptance has admitted is a separate legal entity from its parent. Even if Acceptance's assertion were consistent with basic principles of corporation law in Nebraska and other jurisdiction, this would mean that Acceptance owns a property interest in the liabilities as well as the assets of American Growers. At present, American Grower owes FCIC approximately $41 million, more than the damages that Acceptance seeks in this suit. If Acceptance holds the right to "realize the value" of American Growers' assets, then it logically follows that it must assume responsibility for American Growers' liabilities, too.

Second, there is no genuine issue of material fact that Rain and Hail requested that RMA waive the restrictions that the Standard Reinsurance Agreement ("SRA") imposed on the transfer of American Growers' in-force insurance policies, which were issued subject to the terms of the SRA and the policies that it incorporates by reference, including the FCIC Crop Insurance Handbook. Section 4.C(9) sets the only means of transferring an in-force policy. Both RMA Administrator Ross Davidson and John Joyce, the Chairman of Rain and Hail at the time of the proposed transaction in 2002, agreed that 4.C(9) blocks the transfer of in-force policies. Acceptance does not dispute these facts, but asserts the legal argument that 4.C(9) is "inapplicable" to bulk transfers. Once again, Acceptance cites no evidence in support of its interpretation of 4.C(9), and cites no record evidence that contradicts the testimony of John Joyce. Acceptance asserts that RMA effected a taking by blocking the transfer of American Growers' policies to Rain and Hail. However, Acceptance cannot prove that any taking occurred, because Acceptance did not possess any compensable

property interest in the unrestricted transfer of American Growers' insurance policies. Section 4.C(9) blocked that transfer.

In contrast to the uncontroverted facts that support the Government's motion for summary judgment, many of the facts upon which Acceptance bases its cross-motion for summary judgment are controverted, as demonstrated in detail in defendant's 102-page response to Acceptance's proposed findings of uncontroverted fact. Moreover, Acceptance's overarching theory of its claim – that RMA's actions were not based on any reasoned analysis, and were not in the public interest – is misplaced. Although it has styled this suit as a taking claim, what Acceptance appears to seek is judicial review of RMA's administrative decision to "reject" the proposed purchase of American Growers' insurance policies by Rain and Hail. None of the proposed findings of fact asserted by Acceptance that challenge the reasons for RMA's decision are relevant to a taking claim, which must presume that the agency action was lawful and authorized. Acceptance's assertions cannot sustain a taking claim in this Court, but as the Court noted at the outset of the case, are more akin to a suit for judicial review in Federal district court pursuant to the arbitrary and capricious standard of review of the Administrative Procedures Act. December 19, 2003 and March 11, 2004 Orders.

## I. Acceptance Has Failed To Demonstrate That This Court Possesses Jurisdiction Over A Taking Claim Against FCIC

### A. The "Law Of The Case" Doctrine Does Not Bar The Court From Reconsidering Its August 13, 2004 Order

In its opposition brief (Pl. Opp. 43-49), Acceptance has failed to address, let alone rebut, many of the cases cited by defendant in its February 10, 2006 opening brief ("Def. Br."), which demonstrate that pursuant to 7 U.S.C. § 1506(d), Congress has divested this

Court of jurisdiction over any claims against the Federal Crop Insurance Corporation ("FCIC"), including taking claims. Def. Br. 10-14. Nor does Acceptance dispute that, as shown in defendant's opening brief, this suit asserts a claim against FCIC, which acts through the Risk Management Agency ("RMA"). Def. Br. 8-10.

Acceptance chiefly rests its opposition to defendant's renewed motion to dismiss for lack of subject matter jurisdiction upon the law of the case doctrine. Pl. Opp. 36-42. Acceptance asserts that "extraordinary circumstances" are required for the Court to reconsider its August 13, 2004 order denying defendant's February 9, 2004 motion to dismiss, and that none exist here. Pl. Opp. 37-38. However, the United States Court of Appeals for the Federal Circuit has cautioned that "the application of the law of the case doctrine is discretionary . . . . and should not be applied woodenly in a way inconsistent with substantial justice." Hudson v. Principi, 260 F.3d 1357, 1363 (Fed. Cir. 2001); Tronzo v. Biomet, Inc., 236 F.3d 1342 (Fed. Cir. 2001) (law of the case doctrine is best viewed as a prudential doctrine "that direct[s] a court's discretion, but do[es] not necessarily limit a court's power").

Cases quoted in the most recent Federal Circuit opinion cited by Acceptance suggest that the law of the case doctrine only applies once a judgment or appellate decision has been rendered. Augustine v. Principi, 343 F.3d 1334, 1339 (Fed. Cir. 2005) ("See United States v. United States Smelting, Ref. & Mining Co., 339 U.S. 196, 199 (1950) ("[I]t requires a ***final judgment*** to sustain the application of the rule of the law of the case"); United States v. Turtle Mountain Band of Chippewa Indians, 222 Ct. Cl. 1, 612 F.2d 517, 520 (1979) ("[O]nce a case has been decided ***on appeal,*** the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit."))" (boldface and italics

added). In none of the opinions cited by Acceptance did the Federal Circuit hold that extraordinary circumstances are required for a trial court to reconsider a denial of a 12(b)(1) motion that was rendered at the outset of a case, long before any judgment or appellate decision was entered. Pl. Opp. 37 (citing Augustine, 343 F.3d at 1339; Suel v. Secretary of Health and Hum. Servs., 192 F.3d 981, 985 (Fed. Cir. 1995); Gould v. United States, 67 F.3d 925, 930 (Fed. Cir. 1995); Mendenhall v. Barber-Greene Co., 26 F.3d 1573, 1582 (Fed. Cir. 1994); Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 890 (Fed. Cir. 1984).

Even if the law of the case doctrine should be applied to this Court's August 13, 2004 order, the Federal Circuit's opinion in Texas Peanut Farmers qualifies as an "extraordinary circumstance" that merits reconsideration of the prior ruling. Texas Peanut Farmers is a "contrary decision of the law applicable to the issues" by a "controlling authority." Gould, 67 F.3d at 930. The Federal Circuit did not issue its opinion until May 2005, nine months after this Court's August 13, 2004 order denying defendant's motion to dismiss. In contrast, in Gould, the court refused to reconsider its prior ruling in light of Office of Personnel Management v. Richmond, 496 U.S. 414 (1990), because it was decided before the court's prior ruling, and thus did not justify any exception to the law of the case doctrine. Gould, 67 F.3d at 931.

Acceptance attempts to trivialize the Federal Circuit's decision in Texas Peanut Farmers, characterizing the opinion as having "simply concurred" with this Court's dismissal of a claim against FCIC for lack of subject matter jurisdiction. Pl. Opp. 38-39. Acceptance disregards that the Federal Circuit's opinion went beyond merely affirming the result of this Court's dismissal for lack of subject matter jurisdiction, and specifically found that the "plain meaning" of 7 U.S.C. § 1506(d) was that "Congress granted district courts exclusive

jurisdiction over claims against the FCIC." Texas Peanut Farmers, 409 F.3d at 1374 (emphasis added). Nowhere in Acceptance's opening brief does it even address, let alone square, the Federal Circuit's finding with this Court's prior ruling that Section 1506(d) applies only to "issues that arise under the Federal Crop Insurance Act." August 13, 2004 Order at 2. Having ignored in its opening brief the relevant finding of the Federal Circuit in Texas Peanut Farmers, Acceptance cannot now address this finding in its reply brief, which is confined to supporting its cross-motion for summary judgment.

Acceptance makes the serious – and unfounded – charge that "the Government's Section 1506(d) argument is misleading." Pl. Opp. 44. It is Acceptance, not the Government, that has misstated the Federal Circuit's decision in Texas Peanut Farmers. Acceptance inaccurately contends that "Texas Peanut Farmers *discussed* Section 1506(d) . . . only in the context of non-monetary claims asserted against the FCIC alleging violation of due process and requesting injunctive relief." Id. (italics added). In fact, there is no discussion of Section 1506(d) in the Federal Circuit's opinion that limits the scope of the statute's withdrawal of Tucker Act jurisdiction only to "non-monetary claims," or to any other category of claims. The court noted in the "Background" section of the opinion that the plaintiffs "alleg[ed] breach of contract," but did not refer at all to due process or injunctive relief claims. 409 F.3d at 1372, 1373. Try as it may, Acceptance cannot restrict the sweep of the Federal Circuit's finding regarding the plain meaning of Section 1506(d), which cannot be reconciled with this Court's August 13, 2004 order.

Acceptance cites no authority in support of its argument that, because defendant's renewed motion to dismiss was filed nine months after the Federal Circuit issued its opinion in Texas Peanut Farmers, the renewed motion to dismiss is barred by laches. Pl. Opp. 40.

There was no reason to renew the motion to dismiss earlier unless the Court agreed to take the unusual step of staying discovery while it reconsidered the August 9, 2004 order. Defendant has always intended to renew its motion to dismiss in conjunction with a motion for summary judgment, even if Judge Hodges had remained the judge assigned to the case, in hopes of avoiding a needless appeal to the Federal Circuit regarding the jurisdictional issue after the parties and the Court expends their resources deciding the merits of Acceptance's clam. Defendant could not have engaged in "judge-shopping," as Acceptance asserts, because defendant did not request that Judge Hodges transfer the case. Pl. Opp. 40.

**B. Acceptance Misinterprets The Scope Of The SRA, Which Required Acceptance To Exhaust Administrative Remedies Before Filing This Suit**

Acceptance misapprehends that defendant's argument that Acceptance failed to exhaust administrative remedies is "virtually identical" to the argument presented in defendant's original February 9, 2004 motion to dismiss for lack of subject matter jurisdiction. Pl. Opp. 41 (citing Def. Br. 15-18). Acceptance disregards the entire following section of defendant's opening brief (Def. 18-23), which explains the contractual restrictions that the Standard Reinsurance Agreement ("SRA") imposes on transfers of crop insurance policies. Acceptance cites no authority in support of its assertion that defendant must "explain[] what alleged new evidence it unearthed through discovery." Pl. Opp. 39.

In support of a motion to dismiss for lack of jurisdiction, a party may request that a court consider evidence outside the pleadings to resolve the issue. Aerolineas Argentinas v. United States, 77 F.3d 1564, 1572 (Fed. Cir. 1996). However, for purposes of its original motion to dismiss, defendant was required to accept as true the allegations that Acceptance pleaded in its complaint. Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002). Acceptance pleaded that the SRA "governs the reinsurance relationship" between

FCIC and crop insurance providers such as American Growers. Compl. ¶ 6. While this is true in a narrow sense, the SRA has much broader effect than a typical reinsurance agreement between two private parties, and among other matters, restricts the transfer of policies to the procedures set forth in Section 4.C(9) of the Crop Insurance Handbook. DPFUF ¶¶ 41-44, 70. Defendant was unable to present the uncontroverted facts regarding the SRA's restrictions on transfer at the time it filed its original motion to dismiss on February 9, 2004 without appearing to challenge the veracity of the allegations pleaded in the complaint.

Acceptance continues to assert the narrow view of the SRA pleaded in its complaint, contending that the administrative procedures prescribed by 7 C.F.R. § 400.169 "apply only to matters relating to the FCIC's reinsurance obligations arising under the Standard Reinsurance Agreement." Pl. Opp. 45. However, 7 C.F.R. § 400.169(a) does not limit appeals by insurers to reinsurance obligations, "such as disputes as to the amount of indemnification," as Acceptance contends. Pl. Opp. 46. An insurer is required to exhaust administrative remedies regarding any "action that is not in accordance with the provisions of the Standard Reinsurance Agreement." 7 C.F.R. § 400.169. The SRA is defined by its terms to include the Crop Insurance Handbook, and Acceptance challenges RMA's refusal to waive Section 4.C(9) of the Crop Insurance Handbook. The scope of the jurisdiction of the Department of Agriculture Board of Contract Appeals is equally broad. 7 C.F.R. § 24.4(b). Before filing this suit, Acceptance was required to show that American Growers, who was a party to the SRA for the 2003 reinsurance year (July 2002-June 2003), exhausted the administrative procedures available pursuant to 7 C.F.R. § 400.169(a) to appeal the decisions by RMA that Acceptance now challenges in this Court. 7 C.F.R. § 6912(e).

Acceptance misreads National Crop Ins. Servs. v. FCIC, 351 F.3d 346 (8th Cir. 2003), which is inapposite to this case. In National Crop Ins., the United States Court of Appeals for the Eighth Circuit addressed whether insurers were required to exhaust the administrative appeal procedures of 7 C.F.R. 400.169 to resolve a dispute about the "insurance contracts" (MPCI policies) insurers issued to producers. 351 F.3d at 349. The court's ruling turned on the distinction that it drew between the reinsurance contract (the SRA) and an insurance contract (an MPCI policy): "[t]he Insurers do not allege that the [FCIC] Bulletin altered the terms of the **reinsurance contract** between Insurers and the FCIC. Instead, the Insurers allege that the Bulletin unlawfully expands coverage under the *insurance contract* between the Insurers and the growers. . . . We read nothing in § 400.169 which requires a dispute about whether the FCIC is liable for expanding the Insurers' liability under an insurance contract to be heard by the BCA before being brought to district court." 351 F.3d at 349 (italics in original).

Unlike National Crop Ins., this case does not involve a dispute over the coverage of insurance contracts. Instead, Acceptance challenges the restrictions on transfer that the SRA imposed on both producers and insurers by means of Section 4.C(9) of the FCIC Crop Insurance Handbook. The Eighth Circuit stated that 7 C.F.R. § 400.169 requires an insurer to exhaust its administrative remedies "when a dispute between an insurance provider and the FCIC, pertains to coverage under a reinsurance contract." 351 F.3d at 349 (emphasis added). As the court noted, 7 C.F.R. § 24.2(b) provides that the AgBCA only possesses jurisdiction over FCIC determinations "pertaining to standard reinsurance agreements under 7 C.F.R. § 400.169(d)." 351 F.3d at 349 (quoting 7 C.F.R. § 24.2(b)). Because this dispute arises

from the SRA, Acceptance was required to demonstrate that American Growers exhausted its administrative remedies before this suit was filed.

## II. Acceptance Has Failed To Show Any Genuine Dispute Regarding At Least Two Material Facts That Support Entry Of Summary Judgment For Defendant

If the Court declines to reconsider its denial of defendant's motion to dismiss, then the Court should grant defendant's summary judgment motion. There are at least two uncontroverted material facts that provide two independent bases for entering summary judgment for defendant. Further, Acceptance has not raised any genuine issues of material fact that preclude entry of summary judgment for defendant.

### A. Acceptance Did Not Own American Growers' Insurance Policies

Any analysis of Acceptance's allegedly compensable property interest should start from the incontrovertible fact that American Growers, not Acceptance, owned the insurance policies that Acceptance claims were taken by RMA. Acceptance has not controverted that its CEO, John Martin, testified that the MPCI policies that were originally issued by American Growers, and later those that were purchased by Acceptance from IGF and assigned to American Growers, were all carried as assets on American Growers' books. Pl. Resps. to DPFUF ¶¶ 60, 61, 85. Acceptance did not create any genuine issue of material fact by amending its original complaint to replace the multiple references to "American Growers' insurance assets" with references to "Acceptance's assets." See Monarch Painting Corp. v. United States, 16 Cl. Ct. 280, 289 (1989) ("[a] party cannot defeat summary judgment by instigating controversy with its own position on the facts," citing Sohm v. United States, 3 Cl.Ct. 74, 77-78 (1983) Nowhere in its opposition to defendant's motion for summary judgment did Acceptance explain why it should not be held to its admission in its original complaint that the MPCI policies were assets of American Growers.

It is indisputable that in the "Fall 2002" confidential information memorandum about American Growers prepared for Acceptance by Philo Smith & Co., the balance sheet for American Growers recorded "Premiums Receivable" and "Deferred Premiums Due"as assets of American Growers, totaling approximately $110 million. Def. App. 418, 438. Likewise, the November 12, 2002 quarterly statement filed by American Growers with the Nebraska Department of Insurance ("NDOI") records that as of September 30, 2002, American Growers' assets included approximately $152 million in "premiums, agents' balances and installments booked but deferred and not yet due." Def. Suppl. App. 543 (AUS 011583).

Although Acceptance has sprinkled references to the policies as "its" assets in the opposition brief that it filed with this Court, Acceptance did not identify the policies as its assets in its November 2002 quarterly report to the Securities and Exchange Commission. In the Form 10-Q report filed with the SEC on November 19, 2002, Acceptance stated under the heading "The Company – Parent Only" that "[a]s an insurance holding company, the Company's assets consist primarily of the capital stock of its subsidiaries, a surplus note issued by one of its insurance company subsidiaries and investments held at the holding company level." Def. App. 472 (emphasis added). Acceptance's CEO, John Martin, specifically admitted that he reviewed the 10-Q to ensure its accuracy before it was filed. Def. App. 190-91 (Martin 186:15-187:14).

As a holding company, Acceptance owned the capital stock of its subsidiary, American Growers. However, Acceptance did not own American Growers' insurance policies or any of its other assets. Like any other stockholder of a subsidiary corporation, a parent corporation is not responsible for the liabilities of the subsidiary, but this also means that the parent does not own the subsidiary's assets. Acceptance has failed to cite any

evidence to support its assertion that it was the record owner of the policies that Rain and Hail sought to buy. The only allegedly material fact that Acceptance claims precludes entry of summary judgment for defendant on this issue is PPFUF ¶ 14. Pl. Opp. 33-34. In PPFUF ¶ 14, Acceptance asserts that it, not American Growers, "would have received the funds from Rain & Hail had the transaction been consummated." PPFUF ¶ 14 (emphasis added). However, the November 18, 2002 letter of intent stated that it was "non-binding," and that Rain and Hail retained the right to choose not to consummate the transaction if it discovery problems during the due diligence process. DPFUF ¶ 83. Thus, there was no assurance that Acceptance "would have" received any funds.

In the absence of any genuine issue of material fact that American Growers was the record owner of the policies, Acceptance asserts a legal argument that upends basic principles of corporations law. Acceptance contends that as the parent corporation of American Growers, Acceptance possessed a "cognizable property interest in the realizable value of its wholly-owned subsidiary" for purposes of its taking claim. Pl. Opp. 9. Acceptance urges the Court to treat Acceptance and American Growers as a single business, and asserts that "[t]he economic reality is that assets sales and stock sales are merely alternate means by which the corporate parent realizes the value of its subsidiary's business." Pl. Opp. 9-11.

The legal reality ignored by Acceptance is that it is a Delaware corporation (Def. App. 448) that is a separate legal entity from American Growers, a Nebraska corporation. Def. Supp. App. 542. The Supreme Court of Nebraska has stated that "the doctrine of separate corporate existence does not break down merely because a corporation is a subsidiary, even if wholly owned by a parent." Global Credit Servs., Inc. v. AMISUB (Saint Joseph Hospital), Inc., 244 Neb. 681, 687, 508 N.W.2d 836, 842 (1993). In Capital Parks,

Inc. v. Southeastern Advertising and Sales Sys., Inc., 30 F.3d 627, 629 (5th Cir. 1994), the United States Court of Appeals for the Fifth Circuit stated that because a wholly-owned subsidiary was "a separate legal entity possessing its own assets and liabilities," that the parent corporation "cannot transfer the assets" of its subsidiary. The court also stated that the proposed transfer of the parent corporation's stock and assets contemplated "only a transfer of the control, but not the ownership" of the subsidiary's stock and assets. Id.

Acceptance cites not a single case in support of its assertion that a parent corporation holds a property interest in the "realizable value" of a wholly-owned subsidiary. Pl. Opp. 9. In a vain attempt to fill this conspicuous absence, Acceptance refers extensively to a supposed publication of the Society of Actuaries, Insurance Industry Mergers & Acquisitions (2005), as well as a website for Chase Insurance, www.chaseinsurancecompany.com. However, Acceptance has not included any material from the publication or from the website in its appendix, and thus they cannot be considered by the Court as creating any genuine issue of material fact that precludes granting defendant's cross-motion for summary judgment.

In any event, Acceptance cannot meet the applicable standard for treating one corporation as an alter ego for another. In Amisub, the Supreme Court of Nebraska stated that a party seeking to pierce the corporate veil must show that one corporation dominated another "to such extent that [dominated corporation] had no separate corporate existence and functioned solely to achieve the purposes of the dominant corporation. . . . [w]ithout more, the fact that [dominated corporation] is a subsidiary of [dominant corporation] fails to establish that [dominant corporation] controls [dominated corporation]." 244 Neb. at 688, 508 N.W.2d at 843; Air-Sea Forwarders, Inc. v. United States, 39 Fed. Cl. 434, 438 (1997) ("a corporation is considered an 'alter ego' of another where such a unity of interest,

ownership, and control exists between the two, generally a parent corporation and its subsidiary, that their separate personalities no longer exist"), aff'd, 166 F.3d 1170 (1999).

Acceptance asserts that "[t]he proposed transaction between Acceptance and Rain & Hail was, in fact, a sale by Acceptance of its wholly-owned subsidiary." Pl. Opp. 9. The only support for this assertion cited by Acceptance is its own response to defendant's Interrogatory No. 8, which Acceptance has not included in its appendix in support of its opposition to defendant's motion for summary judgment, and which it is now precluded from introducing into the record to raise a genuine issue of material fact. Likewise, Acceptance cites no support in the record for its many irrelevant assertions about the prevalence of asset purchases in the insurance industry. Pl. Opp. 9-12.

Even if it could introduce its interrogatory responses into the record, Acceptance has already conceded in its responses to defendant's proposed findings of uncontroverted fact that the proposed transaction was not a "sale by Acceptance of its wholly-owned subsidiary," as it now asserts. Pl. Opp. 9. Acceptance does not controvert that its own CEO, John Martin, testified that Rain and Hail intended "to purchase a book of policies, not a corporate structure." Pl. Resp. to DPFUF[1] ¶ 73. Acceptance also does not controvert that John Joyce, Rain and Hail's Chairman, testified that "[w]e were buying the book of business . . . . We were not buying the company" (emphasis added). Pl. Resp. to DPFUF ¶ 72 (AICI Corrected Response). Acceptance has failed to identify any record evidence that rebuts Mr. Joyce's testimony and supports Acceptance's assertion that the proposed transaction was a sale of American Growers.

---

[1] "Pl. Resp. to DPFUF" refers to plaintiff's objections and responses to defendant's proposed findings of uncontroverted fact, filed March 24, 2006.

Acceptance incorrectly asserts that "[t]he Government apparently concedes that if Acceptance had planned to dispose of its crop insurance business by selling the stock of its crop insurance company subsidiaries, there could be a compensable taking." Pl. Opp. 11. The Government does not concede that the challenged decisions of RMA could effect a taking in any circumstances, whether the transaction were a sale of stock or assets. Moreover, the property that Acceptance has asserted was allegedly taken by RMA was the MPCI policies. Acceptance has not asserted that RMA effected a taking of the shares of American Growers stock owned by Acceptance.

Acceptance's contention that it held a compensable property interest in "realizing the value of its owned subsidiary" is solely a legal issue, and does not raise a "disputed issue of fact," as Acceptance contends. Pl. Opp. 34 ("Potential Material Issue of Fact" Nos. 1 and 2). There can be no genuine issue of material fact that it was American Growers, not Acceptance, that owned the insurance policies that Acceptance claims were taken by RMA. Nothing more is required for the Court to grant defendant's summary judgment motion than the incontrovertible fact that Acceptance did not own the policies that were allegedly taken by RMA. As a matter of law, Acceptance cannot prove any taking of property that it did not own. Ambase Corp. v. United States, 58 Fed. Cl. 32, 50 (2003).

### B. The SRA Imposed Restrictions On Transferring American Growers' MPCI Policies

Even if Acceptance owned American Growers' insurance policies, any property interest that Acceptance held in the insurance policies was subject to the SRA and the FCIC regulations and handbooks that the SRA incorporates. These include Section 4.C(9) of the FCIC Crop Insurance Handbook, which restricted the transfer of the policies.

Acceptance argues that the "applicability of Section 4.C(9)" is a disputed material fact. This is another attempt by Acceptance to transmute a legal issue into a controverted factual issue. There is no genuine issue of material fact that:

- Section 4.C(9) of the 2002 FCIC Crop Insurance Handbook is titled "Transfer of Policies," and states that "transfer requests must be signed by the cancellation date" (Def. App. 3);
- Section 4.C(9)(b) states "Requirements. The assuming Insurance Provider must complete and have the insured sign a Cancellation/Transfer of Experience Data Form" (Def. App. 3) (underlining in original);
- Section V.I of the SRA incorporated Section 4.C(9) by providing that the "company must be in compliance with . . . handbooks . . . of FCIC" (Pl. Resp. to DPFUF ¶ 34); and
- American Growers entered into the SRA with FCIC for the 2002 crop reinsurance year. Def. App. 30 (Pl. Resp. to Def. RFA No. 8); Pl. Resp. to DPFUF ¶ 55.

Acceptance concedes that "insurance policies by their very nature are subject to restrictions on transferability." Pl. Opp. 15. However, Acceptance asserts that Section 4.C(9) does not address "the sale of policies from one insurer to another, but rather appl[ies] to the situation where *the policyholder* wishes to switch its coverage from one company to another." Id. Whether Section 4.C(9) "applies" to Rain and Hail's proposed purchase of American Growers' policies is a matter of contract interpretation, and thus is a legal issue that is appropriate for resolution on summary judgment. It is not a "material issue of fact," as Acceptance contends. Pl. Opp. 35.

Throughout its brief and its responses to DPFUF, Acceptance asserts that 4.C(9) does not "apply"to transfers of in-force policies, but it never once cites any authority to support its assertions about the alleged "intent" of 4.C(9). Pl. Opp. 3, 15-16, 35; Pl. Resp. to DPFUF ¶¶ 41, 43-44; Def. Resp. to PPFUF ¶¶ 23-26. Moreover, Acceptance's assertion that Section 4.C(9) was not "intended" to apply to the transaction proposed by Rain and Hail is irrelevant. Section 4.C(9) sets forth the only recognized procedure for transferring MPCI policies from one crop insurer to another, which must be done on a policy-by-policy basis before the cancellation date. Because it requires transfers to be performed before the cancellation date, then it did not permit the transfer of in-force policies that Rain and Hail sought. See Viet & Co. v. United States, 56 Fed. Cl. 30, 40 (2003) (applying doctrine of expressio unius est exclusio alterius, i.e., "[w]here certain things are specified in detail in a contract other things of the same general character relating to the same matter are generally held to be excluded by implication" (quoting Smelser v. United States, 53 Fed. Cl. 530, 539 (2002)[

Although the plain meaning of Section 4.C(9) is clear, it is uncontroverted that both Acceptance CEO John Martin and Rain and Hail Chairman John Joyce testified that 4.C(9) blocks the transfer of in-force policies. DPFUF ¶¶ 43, 86, 100.[2] Acceptance has cited no deposition testimony or any other authority to support its interpretation of Section 4.C(9). It resorts instead to a cramped reading of Mr. Martin's unqualified testimony that he was "referring specifically to the prohibition against a farmer/producer transferring an in-force policy after the policy's sales closing date." Pl. Resp. to DPFUF ¶ 86; see also Pl. Resp.

[2] In defendant's opening brief filed on February 10, 2006 ("Def. Br."), we incorrectly cited DPFUF ¶¶ 35 and 70 in support of our statement that "in-force policies cannot be transferred from one insurer to another, as both Mr. Joyce and Acceptance's CEO, testified." Def. Br. 20. The correct cites should have been to DPFUF ¶¶ 86, 100. We apologize for the inadvertent error, and regret any inconvenience it may have caused to the Court.

DPFUF ¶ 100 ("Mr. Joyce's testimony refers to the prohibition against a producer/farmer transferring his/her in-force policy after the policy sales closing date"). This overly narrow interpretation of the two executives' testimony is irreconcilable with the uncontroverted testimony of Mr. Joyce that Acceptance's management understood that Rain and Hail intended to request that RMA waive the restrictions on transferring in-force policies, because they did apply to Rain and Hail's proposed purchase of American Growers' in-force policies. Pl. Resp. to DPFUF ¶¶ 94 (AICI Corrected Statement), 101-103.

Even if Acceptance had held some compensable property interest in American Growers' MPCI policies, that property interest could not have included the specific interest on which Acceptance bases its taking claim: the alleged right to transfer in-force policies to Rain and Hail after the sales closing date had passed. It is incontrovertible that the SRA, which incorporated Section 4.C(9), barred that specific right. American Growers chose to subject itself to that restriction in the 2002 SRA, which it entered before the proposed transaction with Rain and Hail in November 2002.

Any rights to transfer MPCI policies were governed by the terms of the SRA, which included Section 4.C(9). It is immaterial that Acceptance did not enter the SRA, and may have "no contract remedy against the Government for the loss of the value of its crop business." Pl. Opp.12-13. The rights that Acceptance seeks to enforce were created by contract when its wholly owned subsidiary American Growers entered into the SRA to obtain the benefit of Federal reinsurance. Any remedy for a violation of Acceptance's alleged property interest in its subsidiary's assets must be pursued through a breach of contract claim filed by American Growers, not a taking claim filed by Acceptance: "interference with such contractual rights generally gives rise to a breach claim not a taking claim.'" Hughes

Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001) (quoting Sun Oil Co. v. United States, 215 Ct. Cl. 716, 572 F.2d 786, 818 (1978)).

Acceptance asserts (once again with citing any authority) that the right to sell insurance policies "is indeed inherent." Pl. Opp. 14. Acceptance tries in vain to distinguish Conti v. United States, 291 F.3d 1334, 1341 (Fed. Cir. 2002), contending that "the privilege of fishing for mackerel in controlled waters, are not inherent" in the fishing boat owned by Mr. Conti. Pl. Opp. 14. Whatever transfer rights inhered in American Growers' insurance policies were determined by the terms pursuant to which those policies were issued, just as whatever property interest Mr. Conti held in using his fishing boat was subject to the statutes in effect when he bought the boat. It is uncontroverted that the SRA requires crop insurers to issue policies approved by FCIC, and to comply with all FCIC "handbooks." Pl. Resp. to DPFUF ¶¶ 34-35. This includes the Crop Insurance Handbook. Because Section 4.C(9) only permitted the transfer of MPCI policies according to certain procedures, Acceptance cannot assert any property interest in the policies that is compensable pursuant to the Fifth Amendment based upon RMA's refusal to waive the restrictions imposed by Section 4.C(9).

### C. Acceptance Has Not Raised Any Other Genuine Issue Of Material Fact That Precludes Entry Of Summary Judgment For Defendant

As discussed above in sections II.A and II.B., there is no basis for "Potential Material Issues of Fact" Nos. 1 and 5, which Acceptance asserts preclude entry of summary judgment for defendant (Pl. Opp. 33-35). Acceptance did not hold a property interest in American Growers' insurance policies that was compensable pursuant to the Fifth Amendment, because it had no "prerogative of realizing the value of its owned subsidiary," and there is no "material issue of fact as to the applicability of Section 4.C(9)." Pl. Opp. 34, 35.

Likewise, none of the four remaining "potential material issues of fact" identified by Acceptance preclude entry of summary judgment for defendant. Pl. Opp. 33-35 ("Potential Material Issue of Fact" Nos. 2, 3, 4, and 6). All four remaining issues identified by Acceptance address whether RMA effected a taking. Id. If Acceptance did not hold any compensable property interest in American Growers' MPCI policies, it is not necessary to reach the question of whether RMA effected a taking in order to grant defendant's motion for summary judgment.

Even if the Court does reach the question of whether RMA effected a taking, summary judgment for defendant is still appropriate. There is no genuine issue of material fact that RMA's actions did not effect a taking that is compensable pursuant to the Fifth Amendment.

### 1. RMA Took No Action That "Rendered Valueless" American Growers' MPCI Policies

Acceptance obfuscates the substance of the decision made by RMA that Acceptance challenges, describing RMA as effecting a "categorical taking" by "rejecting" the proposed purchase of American Growers' policies by Rain and Hail. Pl. Opp. 34-35. As stated in RMA's November 25, 2002 letter, which Rain and Hail did not contradict in its November 22 or 26, 2002 letters, RMA refused to grant Rain and Hail's request to waive the restrictions of Section 4.C(9). Def. App. 288-93. There is no genuine issue of material fact that RMA denied Rain and Hail's request to permit the transfer of the requested waiver. The only genuine dispute between Acceptance and defendant is over the legal issue of whether RMA's denial effected a taking compensable pursuant to the Fifth Amendment.

Acceptance asserts that "the Government raises a causation argument, suggesting that nothing that the RMA did or did not do 'caused' the loss, but instead the voluntary action of Rain & Hail in abandoning the transaction, coupled with the actions of the Nebraska Department of Insurance, are the real cause." Pl. Opp. 34. Despite Acceptance's contention that "the Government's theory on causation would involve disputed issues of material fact," there is no genuine factual issue regarding the facts on which Acceptance asserts that RMA effected a categorical taking. RMA did not deprive Acceptance of "*all* economically beneficial us[e]'" of American Growers' insurance policies, as is required to prove a categorical taking. Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 125 S. Ct. 2074, 2081 (2005).

It is incontrovertible that it was the Nebraska Department of Insurance ("NDOI"), not RMA, that on November 22, 2002 entered an order of supervision that ordered American Growers not to "(a) Dispose of, convey or encumber any of its assets or its business in force" or to "(e) Transfer any of its property." Def. App. 489.[3] It was the NDOI order of supervision, not any action taken by RMA, that deprived American Growers of "all economically beneficial use" of its MPCI policies. Like the agencies in Conti and Andrus, RMA only enforced a limited restriction that prevented a particular use of the policies – transferring in-force policies to Rain and Hail – if Rain and Hail would not agree to assume

[3] In its response to DPFUF ¶ 124, Acceptance cited no authority for its evasive assertion that the November 22, 2002 NDOI supervision order is "silent" regarding the transfer of American Growers' MPCI policies. Acceptance admitted in its response to DPFUF ¶ 85 that the MPCI policies were carried on American Growers' books as assets. The NDOI supervision order blocked American Growers from transferring "any of its assets." Def. App. 489 (emphasis added). Thus, the NDOI order blocked any transfer of American Growers' MPCI policies, even though it did not explicitly refer to those specific assets, just as Section 4.C(9) prohibited the transfer of in-force policies by requiring that policies be transferred before the sales closing date.

prior years' liabilities. Def. App. 157 (Joyce 348:25-349:10). RMA did not prevent Acceptance or Rain and Hail from transferring the policies under the alternatives identified in Mr. Davidson's November 22, 2002 analysis, such as if Rain and Hail had agreed to assume 2001 and earlier years' liabilities. Def. App. 280. In addition, Mr. Joyce testified that he could not think of any reason that Rain and Hail required RMA approval to purchase American Growers' lists of customers and agents if Rain and Hail had agreed not to try to transfer title to the policies from American Growers to Rain and Hail. Pl. App. 176-77 (Joyce 279:5-10, 280:19-282:22). Thus, Acceptance remained able to "realize value" from American Growers' assets on terms other than those reflected in the November 18, 2002 letter of intent.

Acceptance contends that NDOI "act[ed] in concert with RMA" to place American Growers in supervision. Pl. Opp. 19. However, NDOI Director Tim Wagner testified that NDOI made its own independent determination to enter an order of supervision based upon the financial statements filed by American Growers with NDOI on November 21, 2002, which were a sufficient basis for the order. Pl. App. 395, 400 (Wagner 95:3-17, 115:7-14); Def. App. 487 ¶ 3.

There also is no support for Acceptance's assertion that RMA "seized control of the crop insurance policies at issue and redistributed them to other insurers without Acceptance realizing any value from them." Pl. Opp. 35; see Def. Resp. to PPFUF ¶¶ 59, 60, 117, 124, 125. It is incontrovertible that once NDOI entered the November 22, 2002 order of supervision, the "cut-through" section of the SRA provided that the in-force policies "will be immediately transferred to FCIC without further action of the Company by the terms of this Agreement. . . . and the Company must pay FCIC all . . . premiums collected. The Company

hereby assigns to FCIC the right to all uncollected premiums on all such policies." DPFUF ¶ 37. No compensable taking is possible in light of the cut-through section of the SRA, by which American Growers surrendered any property interest in its MPCI policies once it was placed in supervision. Thus, there is no genuine issue of material fact that RMA did not effect a categorical taking of American Growers' MPCI policies.

### 2. Both Acceptance And Rain and Hail Expected RMA To Require Rain and Hail To Assume Past Years' Liabilities For American Growers' Policies

There is also no genuine issue of material fact regarding Acceptance's claim that RMA effected a non-categorical taking of American Growers' MPCI policies. Acceptance cannot meet at least one of the three elements of proving a non-categorical taking: that it held a reasonable investment-backed expectation that it could sell American Growers' in-force policies to another insurer.

Acceptance asserts the general expectation that RMA's alleged "approval" of the "2001 acquisition of IGF. . . . created in Acceptance's eyes the impression that insurance assets could be bought and sold by approved crop insurance policies." Pl. Opp. 29. The uncontroverted facts show, however, that the specific expectation that Acceptance and Rain and Hail shared in November 2002 was that RMA had required crop insurers who purchased policies from another insurer to assume liabilities from all past reinsurance years for the acquired policies as a condition for RMA waiving the restrictions on transferring in-force policies. It is uncontroverted that both Acceptance CEO John Martin and Rain and Hail Chairman John Joyce testified that, at the time Rain and Hail proposed to purchase American Growers' MPCI policies, they were aware of RMA's practice of requiring the acquiring insurer to assume all liabilities for the acquired policies. Pl. Resp. to DPFUF ¶¶ 63, 108.

Acceptance contends that in November 2002, "RMA initially advised Acceptance's principals that it would approve the Acceptance/Rain & Hail transaction." Pl. Opp. 29. This is a controverted fact. Def. Resp. to PPFUF ¶ 56. Even if this fact were uncontroverted, no investment-backed expectations were created between Mr. Martin's initial conversation with Mr. Davidson on November 15, 2002, and RMA's decision not to grant the requested waivers on November 22, 2002. Any investment-backed expectations regarding the terms on which Acceptance could try to sell American Growers' MPCI policies were formed at the time of the purchase of IGF's policies in 2001, when Acceptance signed an "SRA Assignment and Assumption Agreement" in which it specifically agreed to "assume all financial responsibilities associated with all crop insurance policies reinsured under the 2001 and previous years held by IGF." Def. App. 373, ¶ 2.

The agreement states that FCIC only "approve[d] this <u>Assignment</u>" of IGF's policies to Acceptance on the specified condition that Acceptance would assume all prior years' liabilities. Def. App. 373 (emphasis added). The agreement does not support Acceptance's assertion that RMA "approved" any other aspects of the IGF purchase, as Acceptance contends. Pl. Opp. The agreement could not give rise to any reasonable expectation that RMA would approve the transfer of American Growers' policies on the terms proposed in the November 18, 2002 letter of intent, in which Rain and Hail expressly disclaimed any responsibility for prior years' liabilities. Def. App. 301, ¶ 4. Thus, there is no genuine issue of material fact that Acceptance's assertion that "RMA specifically approved a transaction similar to the transaction proposed between Acceptance and Rain & Hail" is incorrect. Pl. Opp. 35 ("Potential Material Issue of Fact" No. 6).

## III. Acceptance's Motion For Summary Judgment Relies Upon Controverted Facts, And Does Not Meet The Requirements To Prove A Taking Claim

If the Court denies defendant's motion for summary judgment, the Court should also deny Acceptance's cross-motion for summary judgment. Defendant controverts at least some aspects of almost all of the uncontroverted findings of fact that Acceptance has proposed. Def. Resp. to PPFUF ¶¶ 1-132. Some of the most significant controverted facts that preclude entry of summary judgment for Acceptance are discussed below.

First, Acceptance makes contradictory assertions regarding the property interest that it allegedly possessed in American Growers' MPCI policies. Acceptance asserts that "it was Acceptance, not American Growers, that was to benefit from the sale of assets" pursuant to the terms of the November 18, 2002 letter of intent. Pl. Opp. 9. However, Acceptance asserts that the proposed $21.5 million cash payment from Rain and Hail would have "been available" to pay claims by American Growers' policyholders. PPFUF ¶ 129. NDOI Director Tim Wagner testified that he would have blocked any transaction that permitted Acceptance rather than American Growers to retain any funds from Rain and Hail, because he wanted to ensure that American Growers would have as much cash as possible to pay claims. Def. Resp. to PPFUF ¶¶ 14, 107, 129. At a minimum, Mr. Wagner's testimony raises a genuine issue of material fact whether Acceptance held any compensable property interest in American Growers' MPCI policies.

Second, Acceptance's assertion that Rain & Hail "would have consummated the deal" is controverted. Def. Resp. to PPFUF ¶ 15. Even though Rain and Hail may have wanted to consummate the deal, and planned to consummate it, the letter of intent expressly provided that it was "non-binding." Def. App. 294. Rain and Hail Chairman John Joyce testified that

consummating the proposed transaction depended in part upon successfully completing the due diligence process, not just obtaining RMA "approval." Pl. App. 251 (Nov. 7, 2003 Joyce 70:15-20).

Third, Acceptance asserts that RMA effected a categorical taking because it "distributed or made available" American Growers' MPCI policies to other insurers after NDOI placed American Growers in supervision. Pl. Opp. 18. However, Mr. Davidson testified that RMA did not distribute or make available American Growers' policies to other insurers, but rather allowed policyholders to choose a new insurer. Def. Resp. to PPFUF ¶¶ 124, 126-27.

Fourth, Acceptance devotes a substantial portion of its brief to challenging the character of the Government's action, one of the three elements necessary to prove a non-categorical taking. Pl. Opp. 22-29. Acceptance has asserted in its cross-motion for summary judgment a taking claim that is more akin to an APA action, by challenging RMA's action to deny the waivers requested by Rain and Hail as arbitrary and capricious, as the Court noted in its December 19, 2003, and March 11, 2004 orders. Acceptance's counsel asked RMA Administrator Ross Davidson during his deposition if the written analysis that Mr. Davidson prepared was a "decision-making document," as if this were an APA case. Pl. App. 88 (Davidson 339:1-2). However, all of the proposed findings of fact that Acceptance relies upon to support its challenge to the character of RMA's action are controverted, including the following:

- The alleged failure of Department of Agriculture and RMA officials to apply standardized, written criteria to reach their decision regarding Rain and Hail's

requests for waiver, and to record the rationale for its decisionmaking (Def. Resp. to PPFUF ¶¶ 18, 20, 25, 38, 51, 91, 95-96, 113);

- The alleged inadequacy of RMA's analysis of the likely effects of granting the waivers requested by Rain and Hail, which Acceptance asserts would have served the public interest (Def. Resp. to PPFUF ¶¶ 82-89, 91-94, 97-98, 102-06, 109-12, 119-23, 129-32);
- The alleged unfamiliarity of Department of Agriculture and RMA officials with acquisitions by one crop insurer of the assets of another (Def. Resp. to PPFUF ¶¶ 32-33, 35, 39, 53, 69);
- RMA's desire to minimize the risk of lawsuits by agents, insurers, and policyholders who were likely to believe that their interests had been harmed, which Acceptance asserts was the overriding concern that drove RMA to deny the waivers requested by Rain and Hail. Def. Resp. to PPFUF ¶¶ 64, 66, 67, 90, 114

All of these challenges by Acceptance to RMA's decisionmaking rely upon controverted facts, and thus, preclude entry of summary judgment for Acceptance.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in our motion to dismiss for lack of subject matter jurisdiction, or in the alternative, for summary judgment, we respectfully request that the Court grant our motion to dismiss or, in the alternative, our motion for summary judgment, and deny Acceptance's cross-motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

OF COUNSEL:

DONALD A. BRITTENHAM, JR.
Attorney
Department of Agriculture

s/ David B. Stinson
DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

May 8, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on May 8, 2006, a copy of the foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David B. Stinson