# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ACCEPTANCE INSURANCE COMPANIES INC.,<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CASE NO. 03-2794**<br>Judge Thomas C. Wheeler |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO AMEND JULY 31, 2006 ORDER TO CERTIFY JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(d)(2)

Plaintiff, Acceptance Insurance Companies Inc. ("Acceptance"), by and through undersigned counsel, files the following Reply in support of its request that this Court amend its July 31, 2006 Order to certify the question of whether the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1501 *et seq.*, divests this Court of Tucker Act jurisdiction, 28 U.S.C. § 1491, in takings cases against the United States stemming from regulatory action of the Risk Management Agency ("RMA"), a subagency of the Department of Agriculture.

## I. INTRODUCTION

Plaintiff has asked the Court to certify the question of whether this Court has subject matter jurisdiction to hear Plaintiff's takings claim under the Tucker Act. The issue is the applicability and coverage of the FCIA, specifically whether the FCIA is properly construed as shifting jurisdiction over a bona fide takings claim properly filed against the Defendant the United States from the usual forum for such claims, the Court of Federal Claims, to the U.S. district courts. Implicit in this question are related

questions concerning the application of the FCIA that likewise figure prominently in this litigation, including (a) whether Plaintiff's takings claim is subject to the doctrine of exhaustion of administrative remedies under the FCIA, and (b) whether dislodgement of jurisdiction from this Court under the FCIA also effectuates an abridgement of the normal six-year statute of limitations for takings claims by virtue of the FCIA's one-year statute of limitations.

The Government's Opposition to Plaintiff's request is flawed, as it reflects a fundamental misunderstanding of Acceptance's request for certification and is devoid of any discussion of how the Government would be prejudiced by obtaining immediate appellate resolution and guidance from the Federal Circuit on the FCIA issue.

First, although the question that Acceptance has asked the Court to certify is properly characterized as an issue of jurisdiction, it is simply not, as the Government argues, "Acceptance's general proposition that a decision which resolves a jurisdictional issue automatically presents a controlling question of law." Govt. Opp. at 3. Rather, Acceptance contends that it is in the "unique situation" of this case that there is "an ample and sufficient basis and justification for the Court to certify the issue for review by the Federal Circuit Court of Appeals." Pl.'s Mot. at 3. Here, the jurisdictional question presents a question of construction and application of the FCIA in the context of a takings claim.[1] Thus, the jurisdictional issue materially affects several key questions regarding

---

[1] In support of its position that issues of jurisdiction do not present controlling questions of law, the Government cites *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) for the proposition that a question of law is "'controlling' if reversal of the district court's order would terminate the action.'" Govt. Opp. at 3. The Government concludes that because Acceptance's action will continue in district court, the jurisdictional issue does not present a controlling question of law. *Id.* at 4. However, the

the application of the FCIA to this case. As a result, the FCIA issue presents a controlling question of law because if the FCIA applies to this case, it "materially affects issues remaining to be decided in the trial court." *Klamath Irrigation Dist. v. United States*, 69 Fed. Cl. 160, 161 (Ct. Cl. 2005).

Second, the absence of any discussion in the Government's Opposition of prejudice that would befall the Government by obtaining guidance from the Federal Circuit on the jurisdictional issue, before the parties expend additional time and resources, is telling. The Government simply provides no rationale for opposing Acceptance's attempt to resolve the jurisdictional issue.

## II. DISCUSSION

### A. The Jurisdictional Issue Presents a Controlling Question of Law

At the heart of the issue for which Plaintiff seeks certification is the question whether the FCIA applies in this case brought against the United States and, if it does apply, what are the implications of its application. Neither of these questions was resolved by the Federal Circuit in *Texas Peanut Farmers v. United States*, 409 F.3d 1370, 1374 (Fed. Cir. 2005).

*Texas Peanut Farmers* does not answer the question of whether the FCIA applies in a bona fide takings case where the United States is the proper defendant because *Texas*

---

Government ignores the fact that the *Klinghoffer* court makes clear that "the resolution of the resolution of an issue need not necessarily terminate an action in order to be 'controlling.'" *Klinghoffer*, 921 F.2d at 24. Moreover, the *Klinghoffer* court explains that it has "granted certification when the order involved issues of in personam and subject matter jurisdiction." *Id*. In the instant case, where the jurisdictional issue materially affects a number of issues beyond the question of in which court the case will be tried, the presence of a controlling question of law is clear.

*Peanut Farmers* was not such a case. Rather, it involved an attempted circumvention of the FCIA where the FCIC was the proper defendant. Although the plaintiffs in *Texas Peanut Farmers* tried to plead around the FCIA and the grant of jurisdiction to the district courts by the FCIA by naming the United States as the defendant, the court readily punctured that artifice and held that "a suit that is properly characterized as an action against the FCIC for breach of contract must be brought in district court, and that those restrictions cannot be avoided by naming the United States as defendant even though the action is properly one against the FCIC." *Id.* at n.5.

There is no artifice in this case, as the proper party in interest to defend Plaintiffs' takings claim is the United States. Moreover, the Government has never challenged that the United States is the proper defendant in this case. Because this case is not "an action against the FCIC," it is unclear what, if any, effect the FCIA has on this action. Surely, the Federal Circuit should have the opportunity to construe its own opinion in *Texas Peanut Farmers* and tell the parties what, if any, application the FCIA has on this one case.

Moreover, even if the FCIA does apply, there remains unresolved the question of whether the FCIA's exhaustion of administrative remedies provisions would force a takings plaintiff to pursue administrative remedies before permitting recourse to the courts. Acceptance has taken the position that since this is not a case *against the FCIC* for *breach of contract* neither the jurisdictional nor the exhaustion provisions apply. If the Federal Circuit were to hold, as Acceptance contends, that the coverage of the FCIA provisions extends only to contract claims against the FCIC, then both the main and the corollary "jurisdictional" issues -- which court has jurisdiction and whether exhaustion is

required prior to judicial review -- would both be resolved. An interlocutory appeal thus could have the effect of substantially advancing the litigation by construing the coverage of the FCIA in such a way as would dispose of two major issues at one time. This is exactly the kind of salutary effect that interlocutory appeals are designed to address. Thus, the applicability of the FCIA in the context of a takings claim is without doubt a "controlling issue of law" for purposes of interlocutory appeal.

Another embedded issue that would be presented to the Federal Circuit on appeal is what statute of limitations applies if this Court is correct that the FCIA removes Tucker Act jurisdiction over takings claims. Is it the one-year statute of limitations provided by the FCIA, 7 U.S.C. § 1508(j), or the six-year statute of limitations for bringing a claim for monetary damages against the United States in the Court of Federal Claims, 28 U.S.C. § 2501? If the Court is correct that the FCIA divests the Court of Claims of Tucker Act jurisdiction, presumably that would mean that the one-year statute of limitations of the FCIA applies.[2]

In order to reach the conclusion that the FCIA's one-year statute of limitations applies, one would have to find an unambiguous Congressional intent to abridge the Tucker Act's waiver of sovereign immunity. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1019 (U.S. 1984) (finding that the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) did not reflect "an unambiguous intention to withdraw the Tucker Act remedy"). The FCIA does not explicitly withdraw this Court's Tucker Act jurisdiction

---

[2] If certification is denied, the parties will be left to resolve the issue of which statute of limitations applies in district court. The district court is likely to look to *Texas Peanut Farmers* for guidance. Plaintiff believes that the Federal Circuit should have the opportunity to explain if it intended its opinion in *Texas Peanut Farmers* to find an implied waiver of sovereign immunity.

over takings cases. Therefore, any such withdrawal must be implied. *Id.* at 1017 (explaining that "[n]owhere in FIFRA or in its legislative history is there discussion of the interaction between FIFRA and the Tucker Act . . . We would [therefore] have to infer a withdrawal of jurisdiction with respect to takings under FIFRA from the structure of the statute or from its legislative history."). However, the Supreme Court has made clear that repeals of Tucker Act jurisdiction by implication are disfavored. *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 133 (1974).

The Federal Circuit should have the opportunity to explain whether it intended *Texas Peanut Farmers* to mean that the FCIA reflects an implied Congressional intent to abridge the waiver of sovereign immunity by reducing the applicable statute of limitations for takings cases from six years to one year, even as to bona fide takings claims when the FCIC (or the RMA) happens to be the governmental actor that caused the taking.

**B. <u>There Are Substantial Grounds for Difference of Opinion</u>**

The Government argues that there are not substantial grounds for difference of opinion because the Federal Circuit's decision in *Texas Peanut Farmers* provides controlling judicial authority. Govt. Opp. at 4. However, it is simply not correct that "[t]he Federal Circuit's decision in <u>Texas Peanut Farmers</u> resolves the jurisdictional argument raised in this case." *Id.* at 5. As noted above, *Texas Peanut Farmers* was not a takings case. Thus, the Federal Circuit's holding that "a suit that is properly characterized as an action against the FCIC for breach of contract must be brought in district court, and that those restrictions cannot be avoided by naming the United States as defendant even though the action is properly one against the FCIC," *id.* at n.5, does not resolve whether the FCIA divests this Court of jurisdiction over a takings case in which

the United States is the proper defendant. Rather, Acceptance believes, as it has maintained throughout this action, that the Federal Circuit's opinion indicates only that claims in breach of contract against the FCIC must be brought in district court. But again, it seems inarguable that the Federal Circuit is the court best situated to decide which reading of *Texas Peanut Farmers* is correct.

Moreover, there is no merit to the Government's suggestion that the Federal Circuit's decision in *Texas Peanut Farmers* so altered the landscape as to render Judge Hodges' opinion irrelevant. *Texas Peanut Farmers* merely affirmed the decision of the Court of Federal Claims. Thus, because Judge Hodges considered and rejected the Government's argument based on the original decision in *Texas Peanut Farmers v. United States*, 59 Fed. Cl. 70 (2003), and because the Federal Circuit's opinion did not change anything that was not considered by Judge Hodges, there remains a fundamental disagreement between two sitting judges from the same court as to whether the FCIA divests this Court of jurisdiction over a takings case. Judge Hodges found that the purpose of the Federal Crop Insurance Act "does not appear to be inconsistent with this Court's Tucker Act jurisdiction to hear takings claims against the United States" and that Section 1506(d) applies only to "issues that arise under the Federal Crop Insurance Act," August 13, 2004 Order at 2-3, while Judge Wheeler ruled that "Congress mandated in 7 U.S.C. § 1506(d) its clear intention to withdraw this Court's Tucker Act jurisdiction over all claims brought against the Federal Crop Insurance Corporation." July 31, 2006 Order at 10. Consequently, it is clear that there are substantial grounds for difference of opinion on the question of whether the FCIA dispossesses this Court's Tucker Act jurisdiction,

because there are indeed two directly contradictory opinions by the two judges who have examined the matter.

**C. Finality on the Jurisdictional Issue Will Advance the Ultimate <u>Termination of the Litigation and Provide Certainty Beneficial to all Parties</u>**

The Government argues that certification will not materially advance the ultimate disposition of the litigation. *See* Govt. Opp. at 6. As has just been demonstrated, however, that is not the case inasmuch as the question of the FCIA's scope and coverage extends to both the primary jurisdictional issue as well as the exhaustion question, and contains as well the embedded statute of limitations question. That all these could be resolved, or moved toward resolution, on interlocutory appeal demonstrates that interlocutory appeal would materially advance the ultimate disposition of this case.

In addition, the Government's Opposition identifies no possible prejudice that could befall the Government by obtaining finality on these issues from the Circuit whose decision in *Texas Peanut Farmers* constitutes the unavoidable backdrop to their resolution. The Government simply ignores Plaintiff's argument on efficiencies and has advanced no rationale for not getting these issues resolved now, before the parties become subject to the additional time and expense of a transfer to district court. The Government equally ignores the clear value of avoiding lingering uncertainty and potential conflict between courts by submitting the matter to the Federal Circuit for review in light of *Texas Peanut Farmers.* In the absence of reasons counseling against certification, and in consideration of the concerns of practicality and efficiency that weigh strongly in favor of certifying the issue for appeal to the Federal Circuit, the Court should grant Acceptance's motion. All parties, as well as whichever court ultimately

conducts the coming phases of the case at the trial level, will benefit from having the issue of the FCIA's application in the context of a bona fide takings claim resolved with finality and certainty at this time, and by the appellate court best situated to do so.

## III. CONCLUSION

For the foregoing reasons, and for the reasons set forth in its opening brief, Acceptance respectfully requests that the Court certify the question of whether the Federal Crop Insurance Act applies to a takings claim so as to divest this Court of jurisdiction over this case, require exhaustion of administrative remedies, or impliedly abrogate the statute of limitations for takings claims generally.

Acceptance suggests that the question on appeal be framed as follows:

Does the Federal Crop Insurance Act apply to a bona fide takings claim where the FCIC or the RMA is the governmental agency whose actions effectuate the taking; and if so:

> Does the FCIC divest the Court of Federal Claims of jurisdiction over this case;
>
> Does the FCIC impose upon the plaintiff in a takings case a requirement to exhaust administrative remedies; and
>
> Does the withdrawal of Tucker Act jurisdiction affect the statute of limitations?

Dated: September 11, 2006

Respectfully submitted,

/s/ Lewis S. Wiener

Lewis S. Wiener, Esq.
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004
202.383.0140 - phone
202.637.3593 - fax
Counsel for Plaintiff Acceptance Insurance Companies Inc.

OF COUNSEL:
Ronald Massumi
Carter Williams
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004
202.383.0100

Patrick Griffin
Kutak Rock, LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186
402.346.6000