BEFORE THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

In the Matter of:

| | |
|---|---|
| ACCEPTANCE INSURANCE ) | |
| v. ) | CASE NO. 2007-1127 |
| UNITED STATES ) | |

August 7, 2007

The above-entitled matter came on for oral argument, pursuant to notice.

BEFORE: ALVIN A. SCHALL, RANDALL RADER,
JOSEPH J. FARNAN, Circuit Judges

APPEARANCES:

<u>On Behalf of the Agency</u>:

Mr. O'Connell

<u>On Behalf of the Appellant</u>:

Mr. Weiner

BURKE COURT REPORTING, LLC
(973) 692-0660

I N D E X

SPEAKER: PAGE:


| SPEAKER: | PAGE: |
|---|---|
| Mr. Weiner - oral argument | 3 |
| Mr. O'Connell - oral argument | 14 |
| Mr. Weiner - rebuttal | 25 |

P R O C E E D I N G S

CIRCUIT JUDGE: Our last case today is Acceptance Insurance. Mr. Weiner?

MR. WEINER: Good morning.

CIRCUIT JUDGE: Morning.

MR. WEINER: The jurisdictional provisions of the Federal Crop Insurance Act don't seem to draw the same crowd as some other issues.

CIRCUIT JUDGE: It's just as important to us. Please proceed.

MR. WEINER: This case involves the intersection of the Court of Federal Claims jurisdiction of the Tucker Act via 28 U.S.C. Section 1491, and Federal District Court jurisdiction under the jurisdictional provisions of the Federal Crop Insurance Act, 7 U.S.C. 1506(d).

CIRCUIT JUDGE: Can you help me identify the taking here? If you're to get back to the Court of Federal Claims, there's got to be a taking, right?

MR. WEINER: Yes, Your Honor, that's correct.

CIRCUIT JUDGE: What's this taking?

MR. WEINER: The taking here is Acceptance asserts a Fifth Amendment takings claim based on the government's action in preventing Acceptance from selling its in-force crop insurance business and other insurance related assets and thereby obtaining value for its assets,

including the payment of at least $21 1/2 million in cash.

CIRCUIT JUDGE: Okay. I'm going to need you to help me a little more specifically. They've got insurance, right, that says that the price of corn drops below a certain point, the insurer will make up the difference so that the farmer has some incentive to plant in the first place, am I getting that right?

MR. WEINER: Yes, sir.

CIRCUIT JUDGE: Okay. So you've got insurance based on the market. And they pay dividends? The farmers pay certain dividends to get these, this insurance, right?

MR. WEINER: They pay premiums, yes.

CIRCUIT JUDGE: Pay premiums, okay. And now, excuse me, wrong term. Now help me, where is the taking?

MR. WEINER: When Acceptance wanted to sell its in-force insurance policies to Rain & Hail (ph.).

CIRCUIT JUDGE: Rain & Hail was then going to receive the premiums. That's what they were buying, right, the right to receive these premiums?

MR. WEINER: They were going to -- they were going to receive the policies and the going forward liabilities associated with those policies, as well as any premiums that would result from renewals of those premiums. This is --

CIRCUIT JUDGE: And the government is insuring

all this behind, right?

MR. WEINER: There is a federal reinsurance through the standard reinsurance agreement issued by the Federal Crop Insurance Corporation and its parent entity being Risk Management Agency.

CIRCUIT JUDGE: Okay. Now take me to the taking.

MR. WEINER: The Rain & Hail and Acceptance entered into a Letter of Intent, albeit a nonbinding Letter of Intent, whereby Rain & Hail would purchase Acceptance's in-force insurance policies and other insurance assets for a floor of $21 1/2 million and a ceiling of approximately $70 million. Rain & Hail sought approval by the agency for that transaction and the agency came back and said we will not approve this transaction. The policies that Rain & Hail was then willing, at that point, had been willing to pay a minimum of $21 1/2 million were ultimately provided to or allowed to go to Rain & Hail free of charge as well as other of Acceptance's competitors, as a consequence of the Risk Management Agency, the administrator of the Risk Management Agency, Ross Davidson, saying that he would not authorize or approve the requested transaction. So at the end of the day, the government, we believe, was motivated by a public purpose. The record is scant in terms of --

CIRCUIT JUDGE: Well, Judge Rader asked you about the takings. In your complaint, at Paragraph 16, you say that Mr. Davidson, explaining why the RMA rejected the transaction, announced that the transaction would be detrimental -- and isn't this your taking claim -- to the interest of farmers and taxpayers, and therefore didn't object. And then you go on to talk more about it. It's the regulatory action.

MR. WEINER: Yes.

CIRCUIT JUDGE: All right. And the sale is part and parcel possibly of your proof?

MR. WEINER: That's correct, Your Honor.

CIRCUIT JUDGE: Now I think the question for me is if the regulatory action is the taking, what is the discretion factor that takes it outside of a contract action?

MR. WEINER: Because Acceptance is not alleging that there was a breach of the underlying reinsurance contract. It's the regulatory action of denying the sale, a hypothecation of the property, saying you cannot sell your property from Party A to Party B. It is the barring of the free exchange --

CIRCUIT JUDGE: But isn't that just a discretionary decision as opposed to, for instance, if it was a land transaction, the actual condemnation by

regulation in that you render it useless?

MR. WEINER: It may be. But at its core, it's not a breach of contract action. It's not a breach of contract action that Acceptance has where they say you, the FCIC, breached the underlying contract of reinsurance, the SRA between the entities. To the extent that the government argues that the breach occurred in refusing to waive certain provisions, Acceptance never requested that.

CIRCUIT JUDGE: Did the regulatory action take the company or did it take the proposed sale?

MR. WEINER: It took the proposed sale. The result of refusing to allow the transaction to go forward was the company was ultimately put into regulatory supervision, rehabilitation, supervision, and ultimately liquidation. But the proposed -- they did not take the company per se. They effectively took the assets of the company through the regulatory action. But again, at its core, this is not a breach of contract action. And in order for, for the government to prevail on the jurisdictional argument, they've got to fit the square peg into the round hole of saying that we have not alleged a takings action. Again, the ultimate determination --

CIRCUIT JUDGE: I'm sorry, let me put it in the land category where takings are more familiar. You and I enter into a contract to buy a piece of land. You agree

in pricing the land that we need a highway. And so you take the burden on of going to the government and asking for the highway. The government says we're not going to do that. Did they somehow take our transaction or did our transaction failed because we didn't meet a condition under, and in this case assignments of those contracts?

MR. WEINER: Under your hypothetical, I assume that the contract was conditioned upon regulatory approval and there is no property right in getting that approval. The property right that I would have is in my property and my ability to sell that property. In this case, the property interest was the insurance policies. Acceptance had previously been encouraged to purchase insurance assets from other failing or, or less stable insurance companies creating, in their mind, a reasonable investment-back expectation that these, these assets were freely transferable. And they believe that they have the right to transfer these assets. When the government said we are not going to approve this transaction, the result was these assets ended up in the hands of Rain & Hail free of charge. They didn't have to pay for them anymore. We believe that as a -- we believe that as a result of the regulatory action, and we're not contesting that the government does not have a right to exercise its authority regulatorily, but there is a point at which the regulation

goes too far such that it triggers a regulatory taking. And we believe that that, in this case, there has been a regulatory taking of Acceptance's property.

CIRCUIT JUDGE: Excuse me, two questions. One, what is the -- you said the government can properly, it has it in its power to prevent a sale of assets, correct?

MR. WEINER: Under certain circumstances, yes.

CIRCUIT JUDGE: What is the basis for that? Is there a regulation that provides that?

MR. WEINER: In this case, there is no specific regulation that gives the administrator of the RMA authority to accept or reject transactions. The administrator of the RMA does have overall authority to regulate the crop insurance industry. And it's under that, that broad umbrella of authority that the administrator obviously believed he had the authority to accept or reject this transaction, as he had other transactions.

CIRCUIT JUDGE: Where is that -- where is that authority set forth? Is that in a statute or a regulation?

MR. WEINER: It's in the statue and it can be found generally at 7 U.S.C. 6933(b)(1).

CIRCUIT JUDGE: Okay.

MR. WEINER: Which is the RMA's authority, the

statute to supervise the Federal Crop Insurance Corporation.

CIRCUIT JUDGE: So you're saying, your argument is that under the umbrella of that statute, the administrator of RMA took an action here, an action which was, in your view, not unlawful?

MR. WEINER: Oh, no, we have to concede, as we must under Del Rio the authority of the underlying governmental action. We do not challenge the legality of the underlying governmental action. That has got to be conceded as the gravamen of any valid takings claim.

CIRCUIT JUDGE: Okay. Now let me ask you this, what about the government's argument there was a failure to, to exhaust administrative remedies here. The government cites to 7 U.S.C. 6912(e), excuse me, and 7 C.F.R. 1100.169. It says that you didn't exhaust your administrative remedies by making a claim to the deputy secretary and then presumably going to now I guess the government Board of Contract Appeals, then the agriculture board. What is your answer to that?

MR. WEINER: For the same reasons that the jurisdictional statute does not apply, because this was not a case filed by or against a corporation, which is the condition precedent to exercising the jurisdiction under the Federal Crop Insurance Act --

CIRCUIT JUDGE: But if it should have been filed against the corporation, that wouldn't make a difference, would it?

MR. WEINER: I'm sorry. I didn't hear your question?

CIRCUIT JUDGE: In other words, isn't the question here what is the true nature of the claim? Everyone would agree with that.

MR. WEINER: Which is the holding of Texas Peanut Farmers.

CIRCUIT JUDGE: Right. And you're correct and isn't the true, isn't the real answer to the government's administrative failure to exhaust argument, don't we have to decide whether there was a claim that should have been filed against the administrator and then pursued to the Board of Contract Appeals?

MR. WEINER: Yes. And --

CIRCUIT JUDGE: Why do you say it couldn't have gone that route?

MR. WEINER: Because Section 6912(e) isn't applicable on its face because it says that the exhaustion, a requirement to exhaust kicks in when a case has been filed against the secretary, the department, or an agency, office, officer, or employee of the department. We did not sue the secretary.

CIRCUIT JUDGE: Oh, I know you didn't. But is the question should you have?

MR. WEINER: No. Because we, we have asserted properly a Fifth Amendment takings case, as this Court held.

CIRCUIT JUDGE: All right, so that's your answer. The one final question, do you regard -- it seems to me, and you may be disagree, and I'm going to ask the government the same answer. The record here is a little fuzzy. We don't -- the parties didn't provide us with a copy of the, of the contract, the SRA, and the government says this is a contract action. We don't have the contract. There is a dispute as to exactly what happened when, when permission was sought for this transfer. Is the record, at least as far as we're concerned, collate enough for us to decide whether in fact this really is a true takings claim?

MR. WEINER: Yes, Your Honor, I believe it. And I believe it is for the following reason, the question as to whether or not there is a taking is a question that's ultimately left to the determination of the trial court. The question for this tribunal is which trial court should that be, to delve into the facts.

CIRCUIT JUDGE: No, no, no, no, no. The question is, I mean, assuming there was a takings claim

here, and if it gets treated as such you may win and you may lose. The question is having properly asserted a takings claim, if you have, then it should be in the Court of Federal Claims. If you haven't then it's properly in the District Court. The question here isn't whether you win or lose on your takings claim, have you properly asserted one.

MR. WEINER: We believe that we have and that the complaint makes out a prima facie case for a takings claim. As this Court noted again in Texas Peanut Farmers, you have to look at the jurisdictional requirements under the Tucker Act, have we properly named the United States as a party? Now, the Tucker Act, as we know, does not create jurisdiction. Where does the jurisdiction get created? We have filed a claim alleging a breach of the Fifth Amendment takings rights of our client. We're seeking damages that do not sound in tort. That claim is properly filed with the Court of Federal Claims. We have not -- in order to, to grant -- in order, in order to find merit in the government's argument, this tribunal would have to find that the words in 1506(d) that says all suits by or against the corporation really means all suits involving the FCIC in any way.

CIRCUIT JUDGE: No, I think to rule for the government, we'd have to decide that this is not in fact a

takings claim.

MR. WEINER: We believe that we have established a prima facie takings claim based upon the allegations in the complaint that the Acceptance Insurance Company had a cognizable property right that it is not allowed to transfer. As a consequence of the government's regulatory action, those assets were worth valueless. We think we have the essential elements of a Lucas type claim and, as in the Lucas claim, that we can satisfy the three-part criteria under Penn Central.

CIRCUIT JUDGE: Thank you, Mr. Weiner. Would you like to reserve the remainder of your time?

MR. WEINER: Thank you, Your Honor.

CIRCUIT JUDGE: We'll give Mr. Weiner an additional two minutes. So could you give Mr. O'Connell (ph.) seventeen minutes, should he need to use them? That'll make things about even. Mr. O'Connell?

MR. O'CONNELL: May it please the Court, I'd like to respond to a few things that I just heard. There was a lot of discussion about a takings claim. It's the government's position that it doesn't matter whether it's a takings claim, or contract claim, or any other kind of claim because of two things, the language of 1506(d), which says that exclusive original jurisdiction of all suits against the Federal Crop Insurance Corporation is --

CIRCUIT JUDGE: Is there a suit against the FCIC here?

MR. O'CONNELL: It's not in, not in name, but --

CIRCUIT JUDGE: They didn't --

MR. O'CONNELL: -- that's what it is --

CIRCUIT JUDGE: -- call you out at least when they sued you. But so how do we know whether it's against you or against the United States?

MR. O'CONNELL: Well, you can look at the complaint which complains of actions of the Federal Crop Insurance Corporation and the RMA. That's the first place to look.

CIRCUIT JUDGE: If it is a taking, would it -- would the action lie against the United States and therefore be in the Court of Federal Claims?

MR. O'CONNELL: The action would not be in the Court of Federal Claims. And whether the action -- whether in the District Court, the action would be against the United States, I would say, no, that it's by name it can continue against the United States. But at issue is the actions of the agencies involved.

CIRCUIT JUDGE: We know that the actions of the agency. The question is who is being sued? Is the United States being sued for taking property for public purposes or is the corporation being sued, when it isn't on the

papers at least purportedly being sued?

MR. O'CONNELL: Well, there's no --

CIRCUIT JUDGE: How do we make that -- how would you advise this Court to make that decision?

MR. O'CONNELL: I would advise the Court that it doesn't matter because the complaint, itself, complains of the action against the -- of the agency, so it doesn't matter whether they say, well, we're complaining that the actions of the agency, but we're going to name the United States as the defendant so we can choose our forum.

CIRCUIT JUDGE: Mr. O'Connell, let me ask you this, in your brief at pages, well, it looks to me like if you look at the decision, the two key decisions here seem to be, number one, the District Court decision and most importantly I think the Court of Federal Claims decision that transferred it to the District Court. And if you look at A-31, which is the Wheeler decision, that's the Court of Federal Claims, and if you look at A-7, that's the District Court decision, those decisions both seem to assume that this is a takings claim because they never say it's not a takings claim; rather, they seem to suggest it is by this phrase, you know, if you just plug the word takings in place of contract, do you agree?

MR. O'CONNELL: Yes.

CIRCUIT JUDGE: So, number one, we agree that

both courts seem to assume this was a takings claim, correct?

MR. O'CONNELL: Yes.

CIRCUIT JUDGE: Okay. Now if you look at your brief, you see at Page 13 that there's no breach of contract claim here, correct?

MR. O'CONNELL: That's right.

CIRCUIT JUDGE: And you seem to say at Pages 1, 9 and 20 that they're asserting a takings claim, correct? You see at page --

MR. O'CONNELL: Yes, yes.

CIRCUIT JUDGE: Okay. So it looks to me like the government is saying that a takings claim is being asserted here, am I correct?

MR. O'CONNELL: That's what they try, attempted to plead. We would disagree that --

CIRCUIT JUDGE: Well, you say though that they are asserting that claim. You say that on Page 1 of your brief. But you say they are asserting a takings claim and you say the same thing at Page 9, they are asserting a takings claim, okay?

MR. O'CONNELL: Yes.

CIRCUIT JUDGE: So let's assume is it your position that if there is a bona fide a takings claim here, okay, that that claim is not properly in the Court

of Federal Claims. Assuming -- I agree, it seems to me, that if in fact there is a disguise taking claim, in other words, if there is really a claim that's a claim, a contract claim, then they're out of luck, they've got to be in the District Court, no question about it. But let's assume for the moment that it is indeed a bona fide a takings claim for an amount in excess of $10,000, is it your position, the government's position that that should be in the District Court as opposed to the Court of Federal Claims?

MR. O'CONNELL: Yes.

CIRCUIT JUDGE: Why? Because that's taking a pretty big step.

MR. O'CONNELL: Because of the "all suits" language in 1506(d).

CIRCUIT JUDGE: But, again, though, there are cases that say that a takings claim is not a suit against a government, you know, typically, you see takings claims all the time, right, in the Court of Federal Claims?

MR. O'CONNELL: Yes.

CIRCUIT JUDGE: And they arise from the actions of various government agencies, right?

MR. O'CONNELL: Yes.

CIRCUIT JUDGE: Whether it's HUD, or DOE, or whatever. The claim, a constitutional claim, and there

are cases that say it, a constitutional claim is broad against the United States in its sovereign capacity. And, you know, you look at the legislative history, I don't think, it doesn't seem to me, I could be wrong, that the legislative history supports the proposition that Congress intended to take away from the jurisdiction of the Court of Claims coverage over a true, underline true, bona fide, underline bona fide, takings claim. And I don't think the government would want a bona fide a takings claim, bona fide, to be in the Court of Federal Claims because that's the whole purpose of the Court of Federal Claims, to defend suits against the government in its sovereign capacity with exceptions, you know, that we recognize for a takings claim. I would think it's in the government's interest -- I think it may be legally correct to be in the Court of Federal Claims, and that's where from the standpoint of the government to have that be the one court that decides this case, where it should be.

MR. O'CONNELL: Well, first of all, Your Honor, we don't have a preference per se, because we're not trying to forum shop here. We're trying --

CIRCUIT JUDGE: No, you're not. But I think that's where it should be. I'm not saying you have a preference, but I'm saying Congress set up statute where the government decides claims under the Constitution

against the government in excess of $10,000, and this is certainly, you've said, a takings claim. And isn't that, for that reason, that's where it should be?

MR. O'CONNELL: Well, the Tucker Act would be a general statute that addresses this issue. But we -- it's our position that 1506(d) is a more specific statute.

CIRCUIT JUDGE: But that talks about suits against the FCIC. A takings claim isn't a suit against the FCIC. A takings claim is brought against the United States in its sovereign capacity. And if Congress had said that they wanted that regime changed, wouldn't they have done that?

MR. O'CONNELL: Your Honor, by use of the word, "all suits," there's no other interpretation that we can give to it.

CIRCUIT JUDGE: All suits against who?

MR. O'CONNELL: The Federal Crop Insurance Corporation.

CIRCUIT JUDGE: And, right, that is an entity different -- that's a federal agency. It's not the United States in its sovereign capacity. And that's what takings claims are.

MR. O'CONNELL: Well, the --

CIRCUIT JUDGE: "By or against" is the language. They didn't bring any suit by -- well, you didn't bring

the suit and there's no suit against the FCIC if there is a taking, right?

MR. O'CONNELL: No, there's, there's still the suit against the FCIC because the court looks to the true nature of the action. And the true nature of the action is they're complaining of the actions --

CIRCUIT JUDGE: Did I just -- Judge Schall went through that, I think, didn't he? You agreed this is a takings claim.

MR. O'CONNELL: Well, for the purpose of your question, I'm certainly not agreeing that it's a takings claim.

CIRCUIT JUDGE: But, no, but the government says in its brief they're asserting a takings claim.

MR. O'CONNELL: Yes, certainly.

CIRCUIT JUDGE: And that's, I mean, now if in fact it is a takings claim and it goes to trial, and they win, and they lose, then they lose on summary judgment, they lose after trial. But it appears that a takings claim has been asserted here.

MR. O'CONNELL: They're, certainly, they're pleading a takings claim, Your Honor. But in our view of the cases, and we've cited several takings cases that were brought in district courts and not named the United States as a defendant, Supreme Court cases. We're not aware of a

rule that somehow makes the takings case distinct from the contract case where it's only the actions of the United States that's at issue rather than the actions of the agency.

CIRCUIT JUDGE: Well, all the takings claims that are brought in the Court of Federal Claims, even, you know, the takings claims are always brought against the United States in its sovereign capacity, not against the, the agency, the agency isn't named. But let me ask you this, Mr. Weiner says that we have enough on this record to decide this case, okay. He says we can, we can rule -- he would say we can rule that the transfer was proper or improper based on the record we have before us. Do you think that's the case?

MR. O'CONNELL: Well --

CIRCUIT JUDGE: Because the parties didn't provide us with, with very much here. We didn't get a copy of the standard reinsurance agreement. There is a conflict as to what exactly happened. And there is, there is authority for the proposition that a case can be sent back for determination as to the true nature of the claim.

MR. O'CONNELL: Well, if, if the Court's determination is going to turn on the issue of whether or not this is truly a takings claim or whether it's a contract claim, I would say absolutely the Court does not

have enough information. The record that was considered by the Court of Federal Claims principally on the cross-motions by the parties was extensive, as the Court itself says in the opinion. And our version of the facts is much different. And just briefly, what we would say the facts are is that there's a standard reinsurance agreement and that standard reinsurance agreement provides certain provisions by which policies can be transferred from one company to another. After this nonbinding Letter of Intent was signed, Rain & Hail, the company that they were attempting to assign the policies to, came to the RMA and FCIC and said will you waive provisions of that standard contract. The Agency said, no, we will not unless you do certain things. Rain & Hail said, well, we're not interested in doing those things; therefore, we choose not to consummate or continue forward with the transaction outlined in the nonbinding Letter of Intent. So it is a fact-intensive inquiry, Your Honor. And so the answer is, no, you --

CIRCUIT JUDGE: Excuse me. What do you need to review beside the complaint to characterize it as a contract or a takings claim? In other words, it doesn't matter what court makes the decision, apparently to the government, whether it's the Court of Claims or the District Court, either court to make that threshold

finding or conclusion only needs to look at the complaint to determine if it's a proper party, the United States, and if the plaintiff has properly alleged, construed in the complaint most favorable to the plaintiff whether a takings claims -- why would you go into the contracts on that threshold question?

MR. O'CONNELL: Well, because it's jurisdictional. I think the Court would have to look beyond the four corners of the complaint in order to determine which court properly has jurisdiction, and that will involve reviewing the contract and maybe --

CIRCUIT JUDGE: But then picking up on Judge Schall, isn't it more appropriate that a plaintiff who alleges a taking, a regulatory taking against the United States, have that decision made both on behalf of the claimant and on behalf of the government, which has waived its sovereign immunity in the Court of Claims. Why would you want a district court to be playing around with the Tucker Act and takings?

MR. O'CONNELL: Well, we don't want the, the District Court to be playing around with the Tucker Act. It's our position that when Congress enacted 1506(d), it pre-emptied or it removed Tucker Act jurisdiction of lawsuits of this type.

CIRCUIT JUDGE: Mr. O'Connell, let me ask you,

if it's correct that a takings claim, and just assume the hypothetical, if it's correct the takings claim is a claim brought against the United States in its sovereign capacity, should this case not be in the Court of Federal Claims?

MR. O'CONNELL: I think that would probably be correct, Your Honor, yes.

JUDGE 3: Anything further, Mr. O'Connell?

MR. O'CONNELL: No, Your Honor. I'd just ask that the Court --

CIRCUIT JUDGE: Your argument is that this is -- just you're enforcing the contract?

MR. O'CONNELL: Yes.

CIRCUIT JUDGE: It's a question of whether the contract was properly enforced?

MR. O'CONNELL: Yes.

CIRCUIT JUDGE: Thank you, Mr. O'Connell. Mr. Weiner, you have two minutes.

MR. WEINER: Thank you, I'll be very brief. And if I understood correctly the government's argument is that even if this is a taking, the case still belongs in District Court because of the all suits language in 1506(d). We disagree, disagree -- the all suits language of 1506(d) is conditioned expressly upon there being a suit by or against a corporation. We have not filed suit,

properly not filed a suit by or against a corporation. Unlike Texas Peanut Farmers where there was some --

CIRCUIT JUDGE: Without the contract, how do we know if this is just -- in the record, we don't have that. How do we know if this is just a contract enforcement action or a taking?

MR. WEINER: Well, I might think the record is complete, but the last time I looked I don't get a vote. I believe that the allegations of the complaint on their face establish a bona fide takings claim, or at least a prima facie takings claim and it would ultimately be left to the Trier of fact to determine the propriety of that claim. The government is asserting that this is a case that is properly in the form of or should be in the form of breach of contract.

CIRCUIT JUDGE: Who should decide if this is a taking or a contract?

MR. WEINER: I believe -- I don't know.

CIRCUIT JUDGE: If this Court doesn't have enough information to make that on its own, should that be made by the District Court or the Court of Federal Claims?

MR. WEINER: I think that the decision should be made by the Court of Federal Claims.

CIRCUIT JUDGE: Why?

MR. WEINER: Because there has not been a claim

asserted against the corporation. And I think that under the rules of pleading, the allegations in the complaint must be accepted as true. It's the government's burden to show that this is, in fact, a breach of contract claim. The government is not carrying its burden. And I think that ultimately that determination should be left to the Court of Federal Claims with a rebuttable presumption that if it can be shown that, in fact, this is a case, claim that rests properly in contract, at that point then the case can be transferred to the appropriate Federal District Court, which the Court of Federal Claims is --

CIRCUIT JUDGE: Plus this one's already bounced a couple of times, hasn't it?

MR. WEINER: You know, yes, but what's the, what's the remedy then? You know, we've got to get it right. And ultimately what we're trying to avoid is trying the case in Nebraska, going up to the Eighth Circuit, asking the Eighth Circuit to say, look, this Court may have meant by Texas Peanut Farmers and potentially then have the case then transferred back to the Court of Federal Claims because that Court determines it didn't have jurisdiction.

CIRCUIT JUDGE: Thank you, Mr. Weiner.

MR. WEINER: Thank you.

(Whereupon, the above-entitled matter was concluded.)

C E R T I F I C A T E

CASE NUMBER: 2007-1127

CASE TITLE: Acceptance Insurance v. US

HEARING DATE: August 7, 2007

I hereby certify that the proceedings and evidence herein are contained fully and accurately on the tapes at the hearing in the above case before the United States Court of Appeals for the Federal Circuit and that this is a true and correct transcript of the same.

Date:

Official Reporter