# In the United States Court of Federal Claims

No. 03-2794

(Filed: September 25, 2008)

| | | |
|---|---|---|
| ********************************** | * | |
| | * | |
| ACCEPTANCE INSURANCE | * | |
| COMPANIES INC., | * | |
| | * | Fifth Amendment; Regulatory Taking |
| Plaintiff, | * | Claim; Proposed Sale of Crop Insurance |
| | | Policies From One Private Party to |
| | * | Another; No Legally Cognizable Property |
| v. | * | Interest; Omnia Line of Cases; Rule |
| | * | 12(b)(6). |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| ********************************** | * | |

*Lewis S. Wiener,* with whom were *Ronald R. Massumi* and *G. Brendan Ballard,* Sutherland, Asbill & Brennan LLP, Washington, D.C., *Patrick Griffin,* Kutak Rock, LLP, Omaha, Nebraska, Of Counsel, for Plaintiff.

*Michael N. O'Connell*, with whom were *Gregory G. Katsas,* Assistant Attorney General, *Jeanne E. Davidson,* Director, and *Mark A. Melnick,* Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., *Kimberley E. Arrigo,* U.S. Department of Agriculture, Of Counsel, for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

In this Fifth Amendment takings case, Plaintiff Acceptance Insurance Companies, Inc. ("Acceptance") seeks just compensation for damages resulting from the actions of the Risk Management Agency ("RMA") in blocking the proposed sale of certain crop insurance policies and other tangible and intangible insurance assets to a private third party purchaser. This case is before the Court on Defendant's motion under Rule 12(b)(6) of the Court of

Federal Claims ("RCFC") to dismiss for failure to state a claim upon which relief may be granted. For the reasons stated below, the Court finds that Plaintiff has failed to state an actionable claim, and accordingly, Defendant's motion to dismiss is GRANTED.

Background[1]

Acceptance, a publicly-traded insurance holding company based in Nebraska, alleges that the United States, through the regulatory actions of the RMA,[2] effected a taking of Plaintiff's property by blocking the proposed sale of certain of its crop insurance assets to a private third party purchaser. Am. Compl. at ¶ 24.

During the time relevant to this dispute, Acceptance held a wholly-owned subsidiary, American Growers Insurance Company ("American Growers"), through which Acceptance engaged in the crop insurance and property and casualty insurance businesses. See id. at ¶ 7. American Growers was in the business of underwriting a substantial number of insurance policies within the federal crop insurance program, as well as crop insurance policies pursuant to state insurance laws that are not a part of the federal crop insurance program. Id. As a private insurance company reinsured by the FCIC, American Growers was regulated by the FCIC and was required to, among other things, use the coverage levels, prices, premium rates, and transitional yields determined by the FCIC. Id. at ¶ 8.

In November 2002, American Growers announced that it had suffered a $130 million loss in the third quarter. Pl.'s Resp. at 3, June 20, 2008. As a result, American Growers' policyholder surplus fell far below the minimum amount required by the state insurance regulator, the Nebraska Department of Insurance ("NDOI"). Id. In order to remedy this situation, Acceptance, on November 18, 2002, entered into a non-binding letter of intent with Rain and Hail, LLC ("Rain and Hail") detailing the terms of a proposed sale of most of Acceptance's "crop insurance assets." Am. Compl. at ¶ 10. Although structured as a sale

---

[1] The facts recited herein are taken from the parties' briefs on Defendant's April 30, 2008 supplemental motion to dismiss and Plaintiff's amended complaint, filed on April 11, 2005. The Court is satisfied that the material facts necessary to decide the issue presented are not in dispute.

[2] Congress created the RMA within the U.S. Department of Agriculture ("USDA") in 1996 to supervise the already existing Federal Crop Insurance Corporation ("FCIC"). See 7 U.S.C. § 6933 (2006). Congress created the FCIC in 1938 through the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. §§ 1501 et seq., to regulate and re-insure the nation's crop insurance industry, by providing reinsurance to private insurers offering crop insurance to farmers. See 7 U.S.C. § 1503 (2006); Compl. at ¶¶ 4, 6. The reinsurance relationship between the FCIC and private crop insurance companies is governed by a contract referred to as the Standard Reinsurance Agreement ("SRA"). Compl. at ¶ 6. The FCIC is a wholly-owned government corporation that, like the RMA, exists within the USDA. See Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1372 (Fed. Cir. 2005).

of assets, the proposed transaction was in fact a sale by Acceptance of American Growers. Id. at ¶ 11. Generally, Rain and Hail agreed to purchase this property from Acceptance for a fair market value determined to be not less than $21.5 million. Id. at ¶¶ 10, 12.

After Acceptance and Rain and Hail executed the letter of intent, on or about November 20, 2002, Rain and Hail's president and other representatives met with RMA officials to discuss the terms of the proposed sale. Id. at ¶ 14. Shortly thereafter, however, the deal began to fall apart. Plaintiff alleges that on November 22, 2002, RMA administrator Ross Davidson advised Acceptance and Rain and Hail that the RMA would not approve the proposed transaction. Id. at ¶ 15. Plaintiff asserts that Mr. Davidson rejected the transaction because it would be detrimental to the interests of farmers and taxpayers. Id. at ¶ 16.

After the RMA's rejection of the sale on the terms proposed, Rain and Hail ultimately determined not to purchase American Growers' policies. Plaintiff alleges that absent the exercise of Mr. Davidson's regulatory authority to reject the proposed sale, the transaction would have taken place and Acceptance would have received fair market value for its property. Id. at ¶ 17. Thus, according to Plaintiff, the RMA essentially rendered Acceptance's property worthless through its action in rejecting the proposed sale. Id. at ¶ 19.

Moreover, on the same day as the collapse of the Rain and Hail deal, and in view of American Growers' already precarious financial position, the NDOI placed American Growers under supervision, freezing the business and prohibiting transfer of any crop insurance policies. Pl.'s Resp. at 4, June 20, 2008. The RMA continued to control the disposition of American Growers' crop insurance portfolio through its ultimate liquidation, subsequently transferring the crop insurance policies to other approved crop insurance providers, including Rain and Hail. Id. Acceptance received no compensation from the distribution of these policies. Id.

Acceptance filed its Fifth Amendment takings claim in this Court on December 12, 2003. The transfer of Acceptance's assets, accomplished by the RMA without compensation to Acceptance, as well as the RMA's exercise of control over the crop insurance polices, and its redistribution of the policies to other private crop insurers, forms the basis of Plaintiff's regulatory takings claim. Id.

Defendant filed a motion to dismiss pursuant to RCFC 12(b)(1) or, in the alternative for summary judgment, which Senior Judge Robert H. Hodges denied on August 13, 2004. On February 10, 2006, Defendant filed a renewed motion to dismiss pursuant to RCFC 12(b)(1) or, in the alternative for summary judgment. Among other things, Defendant argued that Congress granted the United States district courts exclusive jurisdiction over suits challenging the RMA's actions concerning the FCIC. Def.'s Mot. To Dismiss at 11, Feb. 10, 2006. Following oral argument, this Court granted Defendant's motion and concluded that, because Congress withdrew this Court's Tucker Act jurisdiction over claims against the

FCIC, the case should be transferred to a United States district court under 28 U.S.C. § 1631. Acceptance Ins. Cos., Inc. v. United States, 72 Fed. Cl. 299, 305 (2006). This Court transferred the case to the United States District Court for the District of Nebraska, which denied Plaintiff's motion to transfer the case back to this Court. Acceptance Ins. Cos., Inc. v. United States, No. 8:06CV609, 2006 WL 3538946, at *4 (D. Neb. Dec. 7, 2006). Plaintiff appealed and on October 2, 2007, the United States Court of Appeals for the Federal Circuit held that because Plaintiff's suit did not involve the FCIC, but rather was a suit against the United States, 7 U.S.C. § 1506(d) did not divest this Court of jurisdiction to hear the case. Acceptance Ins. Cos., Inc. v. United States, 503 F.3d 1328, 1338 (Fed. Cir. 2007). The Federal Circuit thus reversed the district court's denial of Plaintiff's motion for retransfer and instructed the district court to transfer the suit back to this Court. Id. at 1338-39. Defendant then filed the present motion to dismiss on April 30, 2008. Briefing on Defendant's motion was completed on July 7, 2008, and the Court heard oral argument on July 17, 2008.

Discussion

A.  RCFC 12(b)(6) Standard of Review

It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When considering a motion to dismiss for failure to state a claim upon which relief may be granted, the Court "must accept as true all the factual allegations in the complaint, and [the Court] must indulge all reasonable inferences in favor of the non-movant." Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted); see also Huntleigh USA Corp. v. United States, 63 Fed. Cl. 440, 443 (2005). While detailed factual allegations in the complaint are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

Under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction to render judgment upon any claim against the United States for money damages in excess of $10,000 that is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. 1491(a)(1) (2006). Thus, "a claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress had withdrawn the Tucker Act grant of jurisdiction in the relevant statute." E. Enters. v. Apfel, 524 U.S. 498, 520 (1998); Acceptance, 503 F.3d at 1336. "If there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the [Court of Federal Claims]." Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 12 (1990) (quoting United States v. Causby, 328

U.S. 256, 267 (1946)).  A takings claim against the United States may be based on the acts of agents of the United States, if the authority to carry out those acts was validly conferred by Congress to the agents and if those acts are within the constitutional power of Congress. See Acceptance, 503 F.3d at 1337.

B.  Takings Analysis

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V, cl. 4.  "The purpose of the takings clause is to prevent 'Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'"  Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1212 (Fed. Cir. 2005) (quoting  Penn Cent. Transp. Co. v. City of N.Y., 438 U.S. 104, 123 (1978)).

The Supreme Court has recognized two kinds of compensable takings: (1) actual takings, through the Government's physical invasion or appropriation of private property, or (2) regulatory takings, through government regulations that unduly burden private property interests.  See Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1378 (Fed. Cir. 2008). In the present case, Plaintiff has alleged a regulatory taking.  Pl.'s Resp. at 6-7, June 20, 2008 ("When the RMA prevented Acceptance from selling the book of business to Rain and Hail, thereby preventing Acceptance from realizing the value of the business, that act constituted a regulatory taking of a cognizable property interest.").

The Federal Circuit has "developed a two-part test for determining whether 'fairness and justice' require compensation for burdens imposed by a particular governmental action." Huntleigh, 525 F.3d at 1377.  As the first step, the court must determine whether the claimant has established a legally cognizable property interest, for purposes of the Fifth Amendment. Id. (citing Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004)). "[O]nly persons with a valid property interest at the time of the taking are entitled to compensation."  Id. (citing Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001)); see also  Air Pegasus, 424 F.3d at 1215 ("[A] claimant seeking compensation from the government for an alleged taking of private party must, at a minimum, assert that *its* property interest was actually taken by the government action."); Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1581 (Fed. Cir. 1990) ("It is a well settled principle of Fifth Amendment Taking law, however, that the measure of just compensation is the fair value of what was taken, and not the consequential damages the owner suffers as a result of the taking."). The Supreme Court has found the Takings Clause to encompass governmental encroachments on real property, personal property, and intangible property interests.  See, e.g., Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1020 (1992) (government regulation restricting use of beachfront property); Andrus v. Allard, 444 U.S. 51, 65 (1979) (government regulation prohibiting sale of Indian artifacts containing the feathers of endangered birds); Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1003-04 (1984) (government

regulation requiring public disclosure of trade secrets by applicants for pesticide registrations).

Once the court has identified a valid property interest, it must determine whether the government action at issue amounted to a compensable taking of that property interest. Huntleigh, 525 F.3d at 1378; Am. Pelagic Fishing, 379 F.3d at 1372.  However, if the claimant fails to demonstrate the existence of a legally cognizable property interest, the court does not proceed with this second step.  Air Pegasus, 424 F.3d at 1213.

### 1.  Plaintiff Has Not Established a Legally Cognizable Property Interest.

With regard to the first inquiry, "the Constitution does not itself create or define the scope of 'property' interests protected by the Fifth Amendment."  Air Pegasus, 424 F.3d at 1213.  "Instead, 'existing rules and understandings' and 'background principles' derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking."  Id. (quoting Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003)).  Although contracts, leases, and other agreements may be considered property within the meaning of the Fifth Amendment, the Government's appropriation of which may trigger the resulting obligation to pay just compensation, "not every exercise of governmental power that interferes with, or frustrates, performance of a contract constitutes a compensable taking."  Kearney & Trecker Corp. v. United States, 688 F.2d 780, 783 (Cl. Ct. 1982) (citing Lynch v. United States, 292 U.S. 571, 579 (1934) and Omnia Corp. v. United States, 261 U.S. 502, 510-11 (1923)).

To explain what constitutes a cognizable Fifth Amendment property interest, courts have distinguished between a plaintiff's actual property and its "collateral interest."  See, e.g., Air Pegasus, 424 F.3d at 1215; Mitchell Arms, Inc. v. United States, 7 F.3d 212, 217 (Fed. Cir. 1993); Schooner Harbor Ventures, Inc. v. United States, 81 Fed. Cl. 404, 412-13 (2008).  "The Fifth Amendment concerns itself solely with the 'property,' *i.e.* with the owner's relation as such to the physical thing and not with the other collateral interests which may be incident to his ownership."  Mitchell Arms, 7 F.3d at 217 (quoting United States v. General Motors Corp., 323 U.S. 373, 378 (1945)).

In Mitchell Arms, the plaintiff asserted that the Government took its property when it revoked a permit which would allow the plaintiff to import semi-automatic rifles into the United States after plaintiff's purchase of the firearms. 7 F.3d at 213.  Rejecting plaintiff's takings claim, the Federal Circuit declined to hold that plaintiff's investment-backed reliance on the issued import permits constituted "property" within the meaning of the Fifth Amendment. Id. at 215.  Although the Government "took" from plaintiff the ability to realize an expectation in the ultimate market disposition of the rifles, this was a "collateral interest" incident to plaintiff's ownership of the rifles. Id. at 217.  Such property, the court held, is not protected by the Fifth Amendment, since plaintiff retained complete control over its property.

Id. ("[Plaintiff] could have done anything it wished with the rifles, except import them into the United States in their original configuration.").

In Air Pegasus, the plaintiff alleged a regulatory taking of its heliport business following the Federal Aviation Administration's post-September 11 decision to ban all commercial air travel within 25 nautical miles of Washington, D.C., except at a few select locations.  See 424 F.3d at 1209-10.  The  Federal Circuit rejected the plaintiff's takings claim, finding that the plaintiff did not have a cognizable property interest because it did not actually own any helicopters.  Id. at 1215.  The Federal Circuit added that the plaintiff's "economic injury [was] not the result of the government taking [its] property, but [was] the more attenuated result of the government's purported taking of other people's property."  Id. This derivative injury, the Federal Circuit held,  could "not form the basis for a viable takings claim."  Id.

In Schooner, the plaintiff's claimed property interest consisted of its interest to sell its property to the Navy for the development of a housing project without conditions or additional financial burden.  81 Fed. Cl. at 412.  Relying on the holdings in Mitchell Arms and Air Pegasus, the Court of Federal Claims found the plaintiff's interest to be collateral to its physical ownership in the property.  Id. at 413.  "Whereas, the right to alienate the property is a cognizable property interest, the right to sell the property to the government at a particular price and without conditions is not a cognizable property interest which is protected by the Fifth Amendment."  Id. at 414.

Here, Plaintiff has not demonstrated that it has a protected property right in its crop insurance business, as required for the Government's actions to constitute a compensable taking.  Plaintiff asserts a present property interest in the insurance portfolio and associated assets that constituted Acceptance's crop insurance business, i.e. its book of crop insurance. Pl.'s Resp. at 3, 6, June 20, 2008.  Plaintiff claims that its crop insurance business was the subject of government regulation when the RMA allegedly prevented Acceptance from selling the book of business to Rain and Hail, thereby preventing Acceptance from realizing the value of the business.  Id. at 3, 6-7.  This action, Acceptance argues, constituted a regulatory taking of a cognizable property interest.  Id. at 6-7.

However, following the RMA's rejection of the Rain and Hail transaction, Plaintiff retained possession of the insurance portfolios at issue.  In fact, the actions of the RMA, at best, interfered with Plaintiff's interest in selling its property to Rain and Hail under the terms of the proposed, non-binding agreement.  The RMA did not interfere with the property itself.  Despite the fact that Plaintiff was interested in selling its property to Rain and Hail, and certainly had the right to do so, this interest is not a compensable property right.  Further, although Rain and Hail did sign a letter of intent to purchase Plaintiff's crop insurance assets, this letter was non-binding, and certainly does not equate to an actual contract between the parties. Thus, Acceptance's interest in completing its transaction with Rain and Hail without any involvement from the Government must be characterized as a collateral interest that is

not protected by the Fifth Amendment.  Mitchell Arms, 7 F.3d at 217; Air Pegasus, 424 F.3d at 1215; Schooner, 81 Fed. Cl. at 413-14.

Moreover, when a plaintiff voluntarily enters into an area which, from the start, is subject to pervasive government control, its enforceable rights sufficient to support a takings claim against the United States are extinguished.  See Mitchell Arms, 7 F.3d at 216; Air Pegasus of D.C., Inc. v. United States, 60 Fed. Cl. 448, 453-54 (2004) ("If a party voluntarily enters into an area that is subject to pervasive government control, then a property right that would justify compensation under the Takings Clause may not exist.") aff'd 424 F.3d 1206 (Fed. Cir. 2005).  As the Federal Circuit has explained, "[t]he chief and one of the most valuable characteristics of the bundle of rights commonly called 'property' is 'the right to sole and exclusive possession – the right to *exclude* strangers, or for that matter friends, but especially the Government.'"  Mitchell Arms, 7 F.3d at 215 (quoting Hendler v. United States, 952 F.2d 1364, 1374 (Fed. Cir. 1991)).  Thus, "[t]he reason enforceable rights sufficient to support a taking[s] claim" cannot arise in such an area is that when a citizen voluntarily enters such an area, the citizen cannot be said to possess 'the right to exclude' because it is impossible for a citizen in an area subject to government control to possess this right."  Id. (quoting Hendler, 952 F.2d at 1374).

Although mere participation in a heavily regulated environment does not bar a plaintiff from showing that it has a property interest compensable under the Fifth Amendment, "courts must consider whether the affected 'right of use' is dependent upon the regulatory scheme or whether 'an independent or preexisting right of use under common law applies.'"  Page v. United States, 51 Fed. Cl. 328, 339 (2001) (quoting Maritrans Inc. v. United States, 40 Fed. Cl. 790, 798 (1998)).  If the interest was independent of the regulatory scheme, courts have found that a compensable taking has occurred.  See, e.g., Cienega Gardens v. United States, 331 F.3d 1319, 1334 (Fed. Cir. 2003) (finding that federal statutes preventing the prepaying of federally subsidized mortgages were a taking of property despite heavy regulation of the federal housing program).  In contrast, courts have found property interests to be dependent on a regulatory scheme when pervasive regulation exists in the area.  See, e.g., Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment, 477 U.S. 41, 55 (1986) (holding no property interest existed where State of California voluntarily entered into national social security program for its employees and then was prevented from terminating its participation due to an act of Congress); Conti v. United States, 48 Fed. Cl. 532, 540 (2001), aff'd, 291 F.3d 1334 (Fed. Cir. 2002) (finding no property interest for fisherman whose permit was altered by a new regulation permitted under existing statutory scheme).

Acceptance acquired American Growers not long before the proposed transaction with Rain and Hail.  By doing so, Acceptance voluntarily entered a regulatory scheme knowing that the FCIC retained its statutory authority to regulate private crop insurance companies, pursuant to 7 U.S.C. § 1501.  Plaintiff cannot dispute that its claimed property interest, the book of crop insurance assets, is subject to the existing regulatory scheme for the crop reinsurance industry, as administered by the RMA.  Thus, Plaintiff's property interest cannot

be said to be a property right protected under the Fifth Amendment takings clause. <u>Mitchell Arms</u>, 7 F.3d at 216; <u>Air Pegasus</u>, 60 Fed. Cl. at 455-57.

Plaintiff has failed to establish a legally cognizable property interest, precluding recovery under the Fifth Amendment. <u>Huntleigh</u>, 525 F.3d at 1377. Accordingly, the Court need not proceed with the second step in the takings analysis. <u>Air Pegasus</u>, 424 F.3d at 1213.

### 2. The Omnia Line of Cases Precludes Plaintiff's Claim.

Even assuming Plaintiff could establish a property interest in its crop insurance portfolio, the line of precedent commencing with <u>Omnia Commercial Co., Inc. v. United States</u>, 261 U.S. 502 (1923), also precludes Plaintiff's takings claim. As Defendant asserts in its motion, the Supreme Court, beginning with <u>Omnia</u>, has held that a compensable taking can never occur in cases where government actions caused the loss of a commercial sale from one private party to another, but did not actually take the contract in question. Def.'s Mot. at 5, Apr. 30, 2008. In <u>Omnia</u>, the plaintiff possessed a contractual right to purchase a large quantity of steel from the seller at a low fixed price. However, before the seller could deliver any steel to the plaintiff, the Government requisitioned the seller's entire production of steel plate for the year 1918, because of need for the war effort, and directed the seller not to fulfill its contract with the plaintiff. <u>Omnia</u>, 261 U.S. at 507. The Supreme Court affirmed the decision of the Court of Claims rejecting the plaintiff's claim that the Government's action of requisitioning the seller's steel had effected a taking for public use of its property in the contract. <u>Id.</u> at 508, 514. While acknowledging the plaintiff's property interest in its contract, within the meaning of the Fifth Amendment, the Supreme Court nonetheless held that the plaintiff's loss was merely "consequential" and one for which takings law afforded no remedy. <u>Id.</u> at 510-11. Although the plaintiff had suffered an undeniable loss, the Supreme Court declared that "destruction of, or injury to, property is frequently accomplished without a 'taking' in the constitutional sense." <u>Id.</u> at 508. The Supreme Court added that there are many laws and governmental regulations that injuriously affect the value of private property but for which no remedy is afforded. <u>Id.</u> at 508 ("If, under any power a contract or other property is *taken* for public use, the government is liable; but, if injured or destroyed by lawful action, without a taking, the government is not liable.") In rejecting Omnia's takings claim, the Court noted that "[f]rustration and appropriation are essentially different things." <u>Id.</u> at 513.

This principle has remain unchanged, and has been affirmed in a wide variety of takings claims where the Government, acting in either a regulatory or commercial capacity, has caused the loss of the benefits of a contract or frustrated business expectations. In each of these cases, the plaintiff failed to receive its expected compensation from private agreements as a results of the Government's actions. <u>See</u> <u>Air Pegasus</u>, 424 F.3d 1209-10; <u>NL Indus. v. United States</u>, 839 F.2d 1578, 1579 (Fed. Cir. 1988); <u>Kearney & Trecker</u>, 688 F.2d 780 (Ct. Cl. 1982).

In Air Pegasus, the Federal Circuit characterized the Omnia court's view on takings as finding a "significant difference between an *injury* to one's property interest and a *taking* of one's property interest." 424 F.3d at 1216. Similarly, in NL Indus., the Federal Circuit rejected the takings claim of a spent nuclear fuel processor whose significant investment in developing spent nuclear fuel rod transport vehicles for a reprocessing facility was rendered valueless after the Government banned the operation of the facility. 839 F.2d at 1579. The Federal Circuit agreed with the trial court that Omnia by itself was authority enough to support its holding that frustration of a business by loss of a customer was not a taking. Id. at 1579.

Again, in Kearney & Trecker, the Court of Claims relied on Omnia to find that the Government did not appropriate the plaintiff seller's contract with the third party buyer for a made-to-order aerodefense machine by issuing a directive that required the plaintiff to expedite delivery for the Air Force's order of the same machine. 688 F.2d at 783. The court rejected the plaintiff's argument that "[w]hat was appropriated was not just the [machine], but (the plaintiff's) investment backed expectation to produce and deliver a [machine] to [the buyer] at a date certain." Id. at 782. The court held that the frustration of the plaintiff's "expectations" was not compensable, because the Government had not appropriated any of the rights the plaintiff had under its contract, but only made it impossible for the plaintiff to perform it. Id. at 782-83. "Omnia makes it clear that the mere frustration of a contract resulting from the government's exercise of its power of eminent domain is not a 'taking' for which just compensation must be awarded." Id. at 783.

More recently, in Palmyra Pac. Seafoods, L.L.C. v. United States, the Court of Federal Claims held that government regulations designating an area as a National Wildlife Refuge and prohibiting commercial fishing within did not constitute a taking of the plaintiffs' commercial fishing licenses. 80 Fed. Cl. 228, 233 (2008). At most, the plaintiffs' claim amounted to a frustration of purpose, which the court found not to be compensable under the principles laid out in Omnia. Id.

As Acceptance and Rain and Hail only had a letter of intent to enter into an agreement and not an actual contract, Plaintiff's takings claim is less compelling than those of the plaintiffs in Omnia, Air Pegasus, and Kearney & Trecker, all of whose existing contracts were directly impacted by the government's actions. Under the same reasoning as those cases, however, Plaintiff's claim must also be rejected because RMA's alleged action in rejecting or failing to approve the sale, did not effectuate an immediate taking of the crop insurance assets in question. Rather, at most, the government's actions frustrated Plaintiff's business expectations, which does not amount to a compensable taking under the Omnia line of cases. Omnia, 261 U.S. at 513; Kearney & Trecker, 688 F.2d at 783; Palmyra, 80 Fed. Cl. at 233.

Plaintiff makes several unsuccessful attempts to distinguish Omnia and its progeny. First, Plaintiff argues that the Omnia cases are distinguishable on the basis that the plaintiffs in those cases possessed a mere contract expectancy rather than a present property interest.

Pl.'s Resp. at 8, June 20, 2008.  However, the Supreme Court in Omnia made no distinction between a mere contractual expectancy and a present property interest and, in fact, found that the plaintiff did have a property interest.  261 U.S. at 508 ("The contract in question was property within the meaning of the Fifth Amendment.").  Further, as Defendant notes in its reply brief, Acceptance is in a weaker position than the plaintiffs in the Omnia line of cases.  See Def.'s Reply at 2, July 7, 2008.  Specifically, the plaintiffs in the Omnia line of cases had binding contracts or leases interfered with by governmental regulation or action while Acceptance only had a non-binding letter of intent with Rain and Hail.  Id.  Even in the few cases Plaintiff relies on for support, including Tulare Lake Basin Water Storage Dist. v. United States, 49 Fed. Cl. 313 (2001), and Cienaga Gardens, 331 F.3d 1319, the plaintiffs had contractually-conferred rights sufficient to meet the Fifth Amendment property interest requirement and, as a result, the plaintiffs in both cases succeeded in their takings claims.  Cienaga Gardens, 331 F.3d at 1335 (holding that the legislation was "aimed at the contract rights themselves in order to nullify them"); Tulare Lake, 49 Fed. Cl. at 324 (holding that water use restrictions imposed by the Government effected a taking of property of water users who had contract rights entitling them to the use of a specified quantity of water).  Moreover, Plaintiff has not shown that the Government appropriated the benefits of Acceptance's crop insurance assets for itself, in contrast to Cienega Gardens and Tulare Lake, where the courts upheld the plaintiffs' takings claims.  Cienaga Gardens, 331 F.3d at 1335 ("Where Congress' actions have the effect of 'keep[ing] [the contract] alive for the use of the government' rather than 'bring[ing] the contract to an end,' a court should conclude that there *has* been a taking.") (comparing Omnia, 261 U.S. at 213); Tulare Lake, 49 Fed. Cl. at 317-18 ("[T]he contract holder can recover only if the government has actually appropriated the contract itself, *i.e.*, stepped into the shoes of the contracting party and assumed the rights and responsibilities under the contract.").

Second, Plaintiff asserts that Omnia precludes takings claims where the injury to contractual expectations is only consequential or derivative of an action taken against third parties or of general applicability.  Pl.'s Resp. at 11, June 20, 2008.  Therefore, Plaintiff contends, if the action is specifically directed at a plaintiff, rather than at a third party, then Omnia does not preclude the plaintiff from alleging a cognizable takings claim even if that claim is premised solely on a contractual expectancy.  Id.  As such, Plaintiff argues that even if Acceptance's takings claim was not premised on its present property interests in its crop insurance business, it still has a potential takings claim based on the RMA's action directed specifically against Acceptance by preventing the sale to Rain and Hail.  Id.  The Court is not persuaded by Plaintiff's attempts to distinguish Omnia and the related cases where the plaintiffs suffered a loss of business as a result of the government's regulation of a third party.  As Defendant notes in its Reply, the Federal Circuit recently rejected a similar attempt to distinguish Omnia in Huntleigh, 525 F.3d at 1381.  Def.'s Reply at 7-8, July 7, 2008. In Huntleigh, the Federal Circuit held that, because the plaintiff in Omnia had an existing contractual relationship at which the Government squarely directed its actions, the facts in Omnia were more favorable to the plaintiff than the facts in that case.  Huntleigh, 525 F.3d at 1381.  The Federal Circuit added that, in Omnia, although the Government requisitioned

the steel plate that was meant for Omnia and directed the seller not to comply with its contract, there was no taking because this lawful government action did not appropriate the contract but only rendered performance of the contract impossible. Id. (citing 261 U.S. at 507, 511). In this case, no contract existed between Acceptance and Rain and Hail at the time of the RMA's actions. Moreover, the Government's actions at most resulted in the frustration of Acceptance's business interest in trying to revive its failing business, but did not appropriate any of Acceptance's crop insurance assets, and thus, did not constitute a taking of Plaintiff's property.

   C.  RMA's Authority to Approve or Reject Transactions.

Defendant also argues that the RMA has no authority to approve or reject the sale of assets from one insurer to another. Def.'s Mot. Dismiss at 8, Apr. 30, 2008. Thus, Defendant states the Court need not resolve the factual dispute regarding whether RMA rejected the Rain and Hail transaction because to the extent that it did, the RMA acted outside its authority and such action cannot amount to a taking. Id. at 9-10. Given that Plaintiff's property interest cannot be said to be a property right protected under the Fifth Amendment takings clause, the Court need not consider this position.

Conclusion

Based upon the foregoing, Defendant's motion to dismiss under RCFC 12(b)(6) is GRANTED. The Clerk is directed to dismiss Plaintiff's complaint with prejudice.

   IT IS SO ORDERED.

                              s/Thomas C. Wheeler
                              THOMAS C. WHEELER
                              Judge